Belknap
No. 85-357

## Vermont Mutual Insurance Company

v.

## Miller Day Malcolm

October 2, 1986

*Downs, Rachlin & Martin*, of Burlington, Vermont, and *Rans-meier & Spellman*, of Concord (*Robert D. Rachlin* and *Michael J. Gannon* on the brief, and *Mr. Rachlin* orally), for the plaintiff.

*Avery & Friedman*, of Boston, Massachusetts, *Font & Glazer*, of Cambridge, Massachusetts, and *Backus, Shea & Meyer*, of Manchester (*Michael Avery & a.* on the brief, and *Mr. Avery* orally), for the intervenor, plaintiff in the underlying suit.

SOUTER, J. In this declaratory judgment proceeding, the insurer appeals a decree of summary judgment entered by the Superior Court (*Murphy*, J.), finding coverage under a homeowner's insurance policy for liability arising from an insured's acts of sexual assault. We reverse.

An eleven-year-old boy and his mother brought an underlying civil action in which they alleged that over the course of a weekend the defendant committed five sexual assaults upon the boy, including fellatio and sodomy, causing psychological injury that necessitated expensive remedial treatment. The defendant's insurer brought the present action under RSA 491:22 to determine whether its homeowner's policy issued to the defendant would cover any liability that might result, and the mother was permitted to intervene. The insurer and the intervenor filed cross motions for summary judgment, and on the intervenor's motion the trial court made three specific rulings: (1) the assaults were an "occurrence" as defined by the policy, which conditions coverage upon the existence of an "occurrence" causing bodily injury or property damage; (2) the resulting coverage was not defeated by a policy exclusion designed to deny coverage when the underlying injury was either expected or intended from the standpoint of the insured; and (3) the five acts of assault were a single "occurrence" for purposes of determining coverage limits. The court accordingly granted summary judgment for the intervenor on the existence of coverage but limited its potential extent.

The intervenor has appealed the third ruling, and the insurer has appealed the first and second. We hold that the court erred in ruling that the assaults alleged were an "occurrence" for purposes of determining coverage, and therefore we do not reach the second or third issues.

The relevant portions of the company's policy are written in language that became common after 1966. *See* Annot., 31 A.L.R.4th 957, 972 (1984). In the basic provision for personal liability coverage the insurer

> "agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury . . . to which this insurance applies, caused by an occurrence."

The insurer does not deny that in the underlying action the boy has alleged that he sustained "bodily injury." Therefore, the threshold issue of coverage in this proceeding is whether the assaults that allegedly caused the injury were an "occurrence."

The policy defines "occurrence" as "an accident, including injuri-

ous exposure to conditions, which results, during the policy term, in bodily injury." "Occurrence" thus sweeps wider than "accident," because "occurrence" is defined to include an injurious exposure to continuing conditions as well as a discrete event. *See* R. KEETON, BASIC TEXT ON INSURANCE LAW 300 (1971). The injurious exposure must, however, itself be accidental in nature. *See McAllister v. Peerless Ins. Co.*, 124 N.H. 676, 680, 474 A.2d 1033, 1036 (1984); *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619, 411 N.E.2d 1157, 1159 (1980).

Thus, the touchstone of interpretation is the definition of "accident" as a cause of injury, as distinct from the injury itself. *See McGinley v. Insurance Co.*, 88 N.H. 108, 111, 184 A. 593, 595 (1936) (policy language may distinguish between accidental means and accidental injury). To understand "accident" we look for the meaning that a reasonable person would attach to the term, *Spaulding v. Concord Gen. Mut. Ins. Co.*, 122 N.H. 515, 516, 446 A.2d 1172, 1173 (1982), and accordingly select the following definition: "[A]n accident is an undesigned contingency, . . . a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Guerdon Industries Inc. v. Fidelity & Casualty Co. of New York*, 371 Mich. 12, 18–19, 123 N.W.2d 143, 147 (1963) (quoting 10 R. ANDERSON, COUCH CYCLOPEDIA OF INSURANCE LAW § 41.6, at 27–28 (2d ed. 1962)).

Although this definition is not remarkable, its application poses the further question, whether the fortuity should be determined by reference to the insured or to the victim. The answer must be, by reference to the insured. Because an injury is always fortuitous to a non-consenting victim, if its accidental character were to be judged in relation to such a victim, virtually all instances of compensable injury would also be instances of accident, and nothing would be accomplished by determining coverage in relation to occurrence rather than injury alone. Thus the general rule for applying "accident" or "occurrence" causation coverage looks to the insured defendant to determine whether the causal event was fortuitous or not. *See* R. KEETON, *op. cit.* at 291–93.

At the least, therefore, an insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results. "[A]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen [circumstance exists or] happening occurs which produces or brings about the result of injury or death." *Unigard Mut. v. Spokane School Dist.*, 20 Wash. App. 261, 264, 579

P.2d 1015, 1018 (1978). Nor can an insured's intentional act be an accidental cause of injury when it is so inherently injurious that it cannot be performed without causing the resulting injury.

■ When "accident" is so understood, it is clear that the causes of the boy's injuries, as claimed in the civil action underlying the present petition, were not accidental. The boy and his mother alleged that the insured committed sexual assaults upon an intended victim. The assaults were inherently injurious in the most obvious sense that they could not be performed upon a boy without appalling effects on his mind as well as forbidden contacts with his body. This common understanding of the nature of such acts is beyond reasonable dispute and consistent with the legislative classifications of the acts within the most serious category of sex offenses, see RSA 632-A:2, XI. Because the causation of psychological injury was thus inherent in the acts alleged, the acts cannot be treated as accidental causes, and the defendant's claim that he did not actually intend to inflict the particular psychological injury claimed is irrelevant. This analysis accords with the result reached in *Freyer*, in which the court stated that "[a]n injury caused by an assault and battery normally is not considered to be [accidentally caused] even if the specific injury was not intended." *Freyer*, 89 Ill. App. 3d at 619, 411 N.E.2d at 1159 (citation omitted). Hence, liability arising from the defendant's acts is not covered.

The intervenor sums up her arguments for a contrary holding by stating that the weight of authority supports the position that "accident" includes the unintended consequences of intentional acts. Although this statement will often be true, it is unpersuasive because it does not address the language that is crucial in determining coverage under the policy in this case.

The policy does not condition coverage on the fortuitous nature of the victim's injury, but on the accidental character of the insured's act. In determining the latter, the policy does not condition coverage on the character of the act viewed in isolation, but on the character of the act viewed, with reference to the insured, as a cause of injury. On the assumption that the insured's act was intentional and the victim's injury was unintended, it is still an open question whether the cause of injury was an accident and therefore "occurrence" for the purpose of applying the basic coverage provision.

If the insured did not intend to inflict the injury on the victim by his intentional act, and the act was not so inherently injurious that the injury was certain to follow from it, the act as a contributing cause of injury would be regarded as accidental and an "occurrence." The basic coverage provision would then apply and the

intervenor's generalization would be true. Such would be the case when an insured driver negligently but quite intentionally made a right turn and injured a pedestrian who, unbeknownst to him, was stepping from the curb into the insured's new line of travel. But if the insured saw the victim stepping from the curb and proceed to make his turn with an intent to strike the victim, his use of the automobile as a weapon was so inherently injurious that the collision would not be regarded as an "occurrence" even if the insured did not actually intend to break any bones. In each example the insured acted intentionally; in each the particular injury was unintended. The act as a cause of injury was accidental in the one case, but not in the other.

Nor do we understand the authorities cited by the intervenor to hold anything contrary to the distinction on which the question of coverage turns in this case. In *State v. Glens Falls Insurance Company*, 137 Vt. 313, 404 A.2d 101 (1979), *Berryllium Corp. v. American Mutual Liability Ins. Co.*, 223 F.2d 71 (3rd Cir. 1955), and *Travelers Ins. Co. v. Reed Co.*, 135 S.W.2d 611 (Tex. Civ. App. 1939), the courts found intentional acts but no intent to harm; in each case unanticipated or uncertain acts or conditions combined with the acts of the defendants to produce the injuries. *State v. Glens Falls Ins. Co. supra* is no help to the intervenor here, for the further reason that the policy definition of "occurrence" differed from the definition now before us, by referring to the injury itself as neither expected nor intended from the standpoint of the insured. The same was true in *Hanover Insurance Co. v. 21 Mott Street Restaurant Corp.*, 95 Misc. 2d 427, 407 N.Y.S.2d 952 (Sup. Ct. 1978). Finally, *Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 469 N.E.2d 797 (1984) was not decided by applying the definition of "occurrence," but by applying a "standpoint" exclusion of coverage, and it thus turned on an issue that we have no occasion to reach.

*Reversed.*

All concurred.