[No. S010524. Feb. 5, 1991.]

J. C. PENNEY CASUALTY INSURANCE COMPANY, Plaintiff,
Cross-defendant and Appellant, v.
M. K., a Minor, etc., Defendant, Cross-complainant and Appellant;
S. K. et al., Defendants, Cross-complainants and Respondents.

**COUNSEL**

Handelman & Bacon, Lawrence K. Handelman, Kenneth E. Bacon, Henry K. Gaus and Susan H. Handelman for Plaintiff, Cross-defendant and Appellant.

Horvitz & Levy, Peter Abrahams, Barry R. Levy, David M. Axelrad, Mitchell C. Tilner, Fred J. Hiestand, McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Jeffrey T. Hammerschmidt, Wasserman, Comden & Casselman, Chris Bennington, Glenn A. Brown, Jr., Richard D. Lester, Paul Kujawsky, Sonnenschein, Carlin, Nath & Rosenthal, Sonnenschein, Nath & Rosenthal, Paul E. B. Glad, Alan M. Posner and Michael J. Hassen as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Monaghan & Metz, Monaghan & Strauss, David P. Strauss, Elizabeth E. Kline, Linda G. Workman, Michael H. Crosby and Brian D. Monaghan for Defendant, Cross-complainant and Appellant.

Ann Haralambie, Harry R. Levine, Douglas DeVries, Leonard Sacks, Bruce Broillett, Ian Herzog, Robert Steinberg, Roland Wrinkle, Judith A. Rowland, Linda Hughes, Robert C. Fellmeth, Terry A. Coble and Mark McWilliams as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Lance C. Schaeffer for Defendant, Cross-complainant and Respondent S. K.

No appearance for Defendant, Cross-complainant and Respondent R. H.

## OPINION

EAGLESON, J.*—A 39-year-old man sexually molested a 5-year-old girl on 20 to 25 separate occasions over a period of approximately 9 months. The man admitted that he intended to molest the girl and that none of his sexual acts with her were accidents. He pleaded guilty to criminal charges (Pen. Code, § 288, subd. (a)) and was sentenced to prison. In a subsequent civil action, he was ordered to pay $500,000 to the child and her mother.

The narrow issue before us is whether the insurer that issued a homeowner's policy to the molester is obligated under the policy to pay the amount of that judgment. The insurer contends the homeowner's policy and Insurance Code section 533 exclude coverage for intentional acts and that sexual molestation of a child is intentional. The child and her mother contend the molestations were not intentional because the molester meant no harm and his repeated debauchery of the child was merely a misguided attempt to show love and affection for her.

We hold that insurers are not required to indemnify their insureds for damages caused by an insured's sexual molestation of a child. Insurance Code section 533 precludes coverage. This result is also consistent with near unanimous precedent in this state and others.

### FACTS

In September 1984, M. K., then a five-year-old girl, told her mother, S. K., that the girl had been sexually molested by an adult male neighbor, R. H.[1] He was a friend of the mother and had often babysat the girl. R. H. was charged with eight counts of willfully committing lewd or lascivious acts with a child under the age of fourteen years in violation of Penal Code section 288, subdivision (a).[2] R. H. pled guilty to one count in a plea bargain that dismissed the other seven counts. He was sentenced to prison for six years.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1] We have identified these persons by only their initials to protect the identity of the minor child. For convenience and clarity we will hereafter occasionally refer to M. K. as "the girl," S. K. as "the mother," and R. H. as "the neighbor," "the molester," or "the insured." References to "the defendants" are to the mother and child collectively.

[2] Penal Code section 288, subdivision (a), states: "Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years."

Before the molestations, J. C. Penney Casualty Insurance Company (hereafter J. C. Penney) had issued to R. H. a comprehensive homeowner's policy that provided liability insurance. In December 1984, J. C. Penney sent R. H. a letter reserving J. C. Penney's rights on the issue of insurance coverage for any civil liability that might be imposed on R. H. The letter stated in pertinent part: "Under your J. C. Penney Casualty Insurance Company Homeowner's Policy No. 0956449-3, coverage is excluded, under Exclusion 1(f) of Section II of the policy, with respect 'to bodily injury or property damage which is either expected or intended from the standpoint of the insured.' . . . Accordingly, J. C. Penney Casualty Insurance Company reserves its right to deny or disclaim coverage on the grounds set forth above or on any other grounds allowd [*sic*] by law or set forth in the text of your policy."

The reservation-of-rights letter also stated J. C. Penney would appoint at its expense legal counsel to represent R. H. in the anticipated civil action against him by the molested child and her mother. J. C. Penney explained, however, that it intended to file a declaratory relief action against R. H. for the purpose of contesting coverage under the homeowner's policy. In January 1985, J. C. Penney filed a declaratory relief action against R. H. and the mother and child based on the policy exclusion for damages "either expected or intended from the standpoint of the insured." J. C. Penney also relied on Insurance Code section 533's provision that "[a]n insurer is not liable for a loss caused by the wilful act of the insured . . . ." R. H., individually, and the mother and child, jointly, filed cross-complaints against J. C. Penney for declaratory relief.

The mother and child filed an action for damages against R. H. in June 1985, alleging causes of action in negligence and intentional tort. R. H. admitted to fondling the girl's genitals with his hands, holding the girl over his head with his thumb inserted into her vagina, and orally copulating her. A medical examination confirmed vaginal penetration, which caused a ruptured hymen, and possible anal penetration.

Before trial the mother and child dismissed all causes of action for intentional tort and proceeded to trial only on theories of negligence and negligent infliction of emotional distress. At the start of the mother and child's case, R. H. stipulated that he had been negligent as to the child. Based on that stipulation, the court entered a directed verdict in the child's action that R. H. was negligent. The issue of R. H.'s negligence as to the mother was submitted to the jury, which in special verdicts found that R. H. was negligent and that his negligence was a legal cause of damage to the moth-

er. ■ ■■■ The jury awarded $400,000 to the child and $100,000 to the mother.[3]

J. C. Penney's declaratory relief action was tried in May 1987. The trial court received evidence as to R. H.'s state of mind when he molested the child. More specifically, R. H. testified in deposition, admitting the following: "*Question*: You intended to do what you did, correct? *Answer*: Yes . . . . *Question*: And you knew at the time you were doing these things that they were wrong; Isn't that correct? . . . *Answer*: Yes, I knew it was wrong . . . . *Question*: And after most of these incidents, you would generally go to the bathroom to relieve yourself? *Answer*: Generally, yes. *Question*: Sexually? *Answer*: Yes. *Question*: Because you were aroused by what had happened? *Answer*: Yes." R. H. also testified, however, that he did not intend to harm the child, and a psychologist testified likewise as to R. H.'s intent.

The trial court did not base its decision on the evidence as to R. H.'s state of mind. Rather, the court found that J. C. Penney was bound by the jury's determination in the underlying action that R. H. had been negligent as to the mother because that issue had been fully litigated. In the child's action, however, the court concluded that, because R. H.'s negligence had been stipulated rather than litigated, there was merely a presumption of negligence that J. C. Penney was entitled to overcome by proper proof. The court further concluded that a violation of Penal Code section 288, including R. H.'s acts of child molestation, is a willful act as a matter of law within the meaning of Insurance Code section 533 and thereby precludes liability insurance coverage.

Both J. C. Penney and the child appealed. The Court of Appeal reversed the judgment in its entirety. The court unanimously held that J. C. Penney is not collaterally estopped from denying coverage as to either the child or mother because J. C. Penney defended the underlying action pursuant to a timely and adequate reservation of rights to deny or disclaim coverage. By a divided vote, the Court of Appeal also held that insurance coverage for

---

[3] The award to the mother was apparently for negligent infliction of emotional distress. In *Thing* v. *La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814], we established the requirements for recovering damages for emotional distress caused by observing a negligent injury to a third person. One of those requirements is that the plaintiff must be "present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim." (*Id.*, at p. 668.) The record in the present case reflects that the mother was never present during any of the molestations of her child. It also appears the mother would be precluded from recovery by our decision in *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583 [257 Cal.Rptr. 98, 770 P.2d 278], in which a majority of justices rejected the view that a parent can as a general matter recover for emotional distress caused by the molestation of a child. The judgment in favor of the mother is final, however, and thus not subject to collateral attack by R. H. based on the subsequent decisions in *Thing, supra*, 48 Cal.3d 644, and *Marlene F., supra*, 48 Cal.3d 583.

R. H.'s liability to the child is not precluded as a matter of law. According to the majority, the intentional-act exclusion in the policy and in Insurance Code section 533 does not bar coverage unless the insured acts with a dual intent: (1) the intent to commit the act itself and (2) a preconceived intent to injure. The majority held that R. H.'s admission of his intent to sexually molest a five-year-old child does not necessarily establish that he also had a preconceived intent to harm the child.

J. C. Penney petitioned this court for review of the Court of Appeal's decision that insurance coverage for child molestation is not precluded as a matter of law. In their answers to the petition (Cal. Rules of Court, rule 28(e)(5)), the child and mother raised the additional issue of whether J. C. Penney is collaterally estopped by the underlying judgment against R. H. from litigating the issue of whether his conduct was intentional.

## DISCUSSION

### I. *Effect of the underlying judgment against the insured*

J. C. Penney defended the underlying action against R. H. pursuant to a reservation of the right "to deny or disclaim coverage." Defendants in the present action (the mother and child) do not dispute that the reservation of rights was timely and adequate to preserve the issue of whether coverage is precluded under the intentional acts exclusions of Insurance Code section 533 and the homeowner's policy issued to R. H. ▆▆ The Court of Appeal correctly held that J. C. Penney is not collaterally estopped by the underlying judgment from asserting that R. H.'s conduct was intentional rather than negligent.

"[I]f the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment. If the injured party prevails, that party or the insured will assert his claim against the insurer. [Footnote omitted.] At this time the insurer can raise the noncoverage defense previously reserved." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 279 [54 Cal.Rptr. 104, 419 P.2d 168].) As the Court of Appeal noted, the quoted statement in *Gray*, although dictum, has long been the established law of California. (*Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1319 [241 Cal.Rptr. 427]; *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 585-586 [126 Cal.Rptr. 267].)

▆▆ To overcome the rule that an insurer does not waive its right to deny coverage, an insured must show that, after the insurer reserved its rights, ". . . the insurer either intentionally relinquished a known right, or acted in

such a manner as to cause the insured reasonably to believe the insurer had relinquished such right, and that the insured relied upon such conduct to his detriment." (*Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co., supra*, 53 Cal.App.3d at p. 587.) ■ Defendants do not assert, and the record does not support, a relinquishment by J. C. Penney. There is no evidence J. C. Penney even suggested to R. H. that it was retracting or limiting its reservation of rights.

■ Defendants attempt to avoid the no-estoppel rule by arguing that J. C. Penney wrongfully interfered with R. H.'s right "to control his defense" of the underlying action, in particular, with his *Cumis* counsel's attempt to settle that action. (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].)[4] An alleged dispute between an insurer and its insured as to proper litigation strategy provides no basis for a third party to assert that the insurer waived its reserved right to deny coverage. The purpose of requiring *Cumis* counsel is to protect an *insured's* interest. If J. C. Penney breached a duty to its insured by interfering with or discharging *Cumis* counsel, *the insured* is the proper party to seek redress. (R. H., who cross-complained against J. C. Penney in this declaratory relief action, did not seek to recover damages based on the alleged mishandling of *Cumis* counsel.) R. H. did not assign to defendants any rights he might have with regard to *Cumis* counsel.[5] We have repeatedly held that "[I]n the absence of an assignment a third party claimant cannot bring an action upon a duty owed to the insured by the insurer." (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 889 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 943-944 [132 Cal.Rptr. 424, 553 P.2d 584].)

■ We reiterate the rule that an insurer that timely and adequately reserves its right to deny coverage and that does not subsequently intentionally waive its reservation of rights is not collaterally estopped by a judgment in favor of a third party against its insured. J. C. Penney is not collaterally estopped to deny coverage in this action for declaratory relief.

---

[4] J. C. Penney provided R. H. with counsel in the damages action. R. H. was initially represented by the same attorney who had represented him in the criminal proceeding. A dispute arose between J. C. Penney, R. H., and that attorney. J. C. Penney retained another attorney to represent R. H. The parties disagree as to whether J. C. Penney effectively terminated the first attorney's participation and somehow deprived R. H. of *Cumis* counsel. (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc., supra*, 162 Cal.App.3d 358.)

[5] The mother and child allege in their cross-complaint for declaratory relief that they are seeking payment of the underlying judgment pursuant to Insurance Code section 11580, subdivision (b)(2). They do not allege an assignment of rights by R. H. to them.

## II. *No coverage for sexual molestation of a child*

■ We turn now to the primary issue addressed by the parties and numerous amici curiae: Is liability coverage for R. H.'s molestations of a child excluded by the terms of the insurance policy and Insurance Code section 533? J. C. Penney contends coverage is excluded because the molestations were intentional. Defendants respond that even an intentional and wrongful act is not excluded from coverage unless the insured acted with a "preconceived design to inflict injury." They contend psychiatric testimony shows that molesters, including R. H., often intend no harm despite the depravity of their acts, and that the molestation is often a misguided attempt to display love and affection for the child.[6]

We conclude there is no coverage as a matter of law. No rational person can reasonably believe that sexual fondlings, penetration, and oral copulation of a five-year-old child are nothing more than acts of tender mercy. Except in the present case, every court to decide this issue under California law has held that a homeowner's insurance policy does not provide liability coverage for child molestation. The courts of many other states also have considered the issue and, almost without exception, have held there is no coverage.

### A. *Insurance Code section 533*

■ Insurance Code section 533 provides that an insurer is not liable for a "wilful act of the insured."[7] Section 533 is "an implied exclusionary clause which by statute is to be read into all insurance policies." (*United States Fid. & Guar. Co.* v. *American Employer's Ins. Co.* (1984) 159 Cal.App.3d 277, 284 [205 Cal.Rptr. 460]; *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865, 880.) As we will explain, section 533 excludes liability insurance coverage for child molestation.[8]

---

[6] Amici curiae appearing on behalf of defendants are the Children's Advocacy Institute, California Trial Lawyers' Association, and the Crime Victims' Legal Clinic. Amici curiae for J. C. Penney are the Association for California Tort Reform, the Association of California Insurance Companies, the National Association of Independent Insurers, Alliance of American Insurers, and several liability insurers.

[7] All further section references are to the Insurance Code unless otherwise stated.

[8] The insurance policy issued to R. H. also contains an explicit exclusion of "bodily injury or property damage which is either expected or intended from the standpoint of the insured." (J. C. Penney homeowner's policy No. 0956449-3, § II, exclusion 1(f).) J. C. Penney relies on both the explicit exclusion and section 533. In *United States Fid. & Guar. Co.* v. *American Employer's Ins. Co., supra,* 159 Cal.App.3d 277 (*USF&G*), a coverage dispute arising from an intentional fire, the court was also faced with an insurer's reliance on an identical policy exclusion and section 533. The court held that section 533 excluded coverage and in dictum concluded that the policy provision also excluded coverage. By addressing both the statute and the policy exclusion, the *USF&G* court's opinion might be read to mean that an insur-

■ We begin with the fundamental rule that our primary task in construing a statute is to determine the Legislature's intent. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) To determine that intent, " 'The court turns first to the words themselves for the answer.' " ■ ■■■ (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406], quoting *People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].)[9]

■ Section 533 states that, "An insurer is not liable for a loss caused by the *wilful act* of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." (Italics added.)[10] The statutory language sheds little light on the precise question before us. (Nor is there any legislative history to assist us.) Read literally, section 533 is internally inconsistent. Its first sentence purports to exclude coverage for all willful acts. The second sentence, however, expressly provides that the insured's negligence does not allow an insurer to disclaim coverage.

Negligence is often, perhaps generally, the result of a "willful act," as the term is commonly understood.[11] For example, "An ordinary consequence of driving an automobile without the exercise of ordinary care or an intentional violation of a statute (speed in excess of the maximum speed limit), is injury to the person or property of the driver or a third person. Certainly no one would contend that an injury occasioned by negligent or even reckless driving was not accidental within the meaning of a policy of accident insurance . . . ." (*Meyer* v. *Pacific Employers Ins. Co.* (1965) 233 Cal.App.2d

---

ance policy can provide coverage for acts excluded by section 533. To that extent, we disapprove the court's decision. Section 533 reflects a fundamental public policy of denying coverage for willful wrongs. (*Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 648 [39 Cal.Rptr. 731, 394 P.2d 571].) The parties to an insurance policy therefore cannot contract for such coverage. (Civ. Code, § 1667.) We therefore need not and do not decide whether coverage would be excluded by the explicit policy exclusion in the absence of section 533.

[9]The Court of Appeal, relying on a prior decision, incorrectly stated that section 533 is subject to the rule of strict construction against an insurer. Not so. The premise of the strict-construction rule is that an insurance policy is an adhesion contract drafted by the insurer, which therefore must be held responsible for any ambiguity. (*Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d 263, 269-271.) Section 533, however, is a statute. It is subject to the rules of statutory construction, not the rules of contract interpretation. We disapprove the contrary view stated by the Court of Appeal and the portion of the prior opinion on which it relied, *Congregation of Rodef Shalom* v. *American Motorists Ins. Co.* (1979) 91 Cal.App.3d 690, 697 [154 Cal.Rptr. 348].)

[10]Section 533 was enacted in 1935. Before that, an essentially identical exclusion was contained in former Civil Code section 2629, as amended in 1873. (Code Amends. 1873-1874, ch. 612, § 242, p. 256.)

[11]Indeed, it is hornbook tort law that an act "is a voluntary contraction of the muscles, and nothing more . . . . When 'act' is used in this sense, it is tautological to speak of a 'voluntary act,' and self-contradictory to speak of an 'involuntary act,' since every act is voluntary." (Prosser & Keeton, The Law of Torts (5th ed. 1984) § 8, pp. 34-35.)

321, 327 [43 Cal.Rptr. 542]; *Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41, 50 [261 Cal.Rptr. 273] [also using negligent-driving hypothetical].) **(9)** "It is settled that 'wilful act' in section 533 means 'something more than the mere intentional doing of an act constituting [ordinary] negligence.'" (Fn. omitted.) (*Fire Ins. Exchange* v. *Abbott* (1988) 204 Cal.App.3d 1012, 1019 [251 Cal.Rptr. 620] [bracketed material in original quotation].) A contrary rule would allow an insurer to deny coverage for a negligent act. That result is specifically prohibited by section 533. We long ago construed section 533's statutory predecessor (former Civ. Code, § 2629) as establishing that "[N]o form of negligence on the part of the insured, or his agents or others, leading to a loss avoids the policy, unless it amounts to a willful act on the part of the insured. The code thereby sets at rest a fruitful cause of litigation." (*McKenzie* v. *Scottish U. & N. Ins. Co.* (1896) 112 Cal. 548, 557-558 [44 P. 922]; see also *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 159 [181 Cal.Rptr. 784, 642 P.2d 1305] [dictum noting that even conduct in conscious disregard of the safety of others, e.g., drunk driving, is not willful under section 533].)

■ In short, section 533 does not preclude coverage for acts that are negligent or reckless. We find nothing in the statute, however, to support defendants' view that a child molester can disclaim an intent to harm his victim. There is no such thing as negligent or even reckless sexual molestation. The very essence of child molestation is the gratification of sexual desire. The act is the harm. There cannot be one without the other. Thus, the intent to molest is, by itself, the same as the intent to harm.

### B. *Our prior decisions*

The reasoning of prior decisions under section 533 also makes clear that the statute precludes coverage for child molestation. ■ The public policy underlying section 533 is to discourage willful torts. (*Tomerlin* v. *Canadian Indemnity Co., supra,* 61 Cal.2d 638, 648.) ■ In addition to being a crime, child molestation is indisputably a willful tort against the child. Defendants, however, contend our decision in *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865 (*Clemmer*), mandates coverage unless the insurer can prove its insured acted with a "preconceived design to inflict injury." (*Id.,* at p. 887.) Based on their view of *Clemmer,* defendants contend psychiatric testimony should be allowed to establish that the insured lacked such a "preconceived design." Numerous insurance industry groups appearing as amici curiae on behalf of J. C. Penney contend *Clemmer* is wrong and should be limited or overruled. J. C. Penney joins in their request but contends alternatively that *Clemmer* is not contrary to the near-unanimous line of decisions that have denied insurance coverage for child molestation. We agree with J. C. Penney that *Clemmer,* when properly

understood, supports the decisions denying coverage for molestation. We therefore reject the request to limit or overrule *Clemmer*. Because both sides of this dispute devote so much emphasis to *Clemmer,* we discuss it in some detail.

*Clemmer, supra,* 22 Cal.3d 865, arose from the killing of a physician (Dr. Clemmer) by his employee (Dr. Lovelace) after an employment dispute between them. The court stated the key facts as follows: "[Dr. Lovelace] greeted Dr. Clemmer, then shot him twice. These shots were followed by two more shots. Finally, Dr. Lovelace knelt close to the victim and at close range shot him in the head. The gun was placed on the ground. Dr. Lovelace remarked that he knew what he was doing and that Dr. Clemmer was destroying him professionally." (*Id.,* at p. 872.) Dr. Lovelace was convicted of second degree murder.

Dr. Clemmer's widow and son subsequently obtained a wrongful death default judgment against Dr. Lovelace. They then sought to recover the amount of the judgment from Dr. Lovelace's liability insurer. The insurer contended the killing was an intentional act and that coverage was excluded by the policy and section 533. The plaintiffs relied on psychiatric testimony that Dr. Lovelace did not have the mental capacity to know and recognize the nature of his act or to control his conduct. The jury returned a special verdict in plaintiffs' favor, but the trial court granted the insurer's motion for a new trial on the sole issue submitted to the jury—whether the killing was a willful act. We *affirmed* the order granting a new trial on that issue. The trial court had ordered a new trial on the ground that plaintiffs' psychiatric testimony was absurd in light of the circumstances of the killing. *Clemmer, supra,* 22 Cal.3d 865, cannot be read to support defendants' view in this case that psychiatric testimony must be allowed to show that an insured did not intend to cause harm by his intentional and wrongful act. Indeed, the result in *Clemmer* is directly contrary to that view.

The portion of *Clemmer, supra,* 22 Cal.3d 865, on which defendants rely is the court's treatment of the insurer's contention (on its cross-appeal) that the trial court had erroneously instructed the jury on the issue of the insured's willfulness. The verdict form asked: " 'Was the death of Dr. Clemmer caused by a willful act of Dr. Lovelace?' " (*Id.,* at p. 886.) The jury was instructed that, " 'If you find by a preponderance of the evidence that Dr. Lovelace had the mental capacity to intend to shoot and harm Dr. Clemmer when he caused his death, as well as the mental capacity to govern his own conduct, you will answer this question "Yes." ' " (*Ibid.*) The insurer contended this instruction improperly required the jury to find a specific intent *to kill* in order to find a willful act by the insured. We rejected the contention, noting that it ignored the language of the instruction, which spoke

only in terms of the *mental capacity* "to shoot and harm." We also stated, however, that even an intentional act is not excluded from coverage under section 533 unless the act is done with a " 'preconceived design to inflict injury.' " (22 Cal.3d at p. 887, quoting *Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 783 [8 Cal.Rptr. 665].) The quoted language is the linchpin of defendants' case. They argue that coverage for child sexual molestation is not excluded unless the insurer can show that the molester had a "preconceived design to inflict injury" on the child. In their view, the intent to molest is not enough.

*Clemmer, supra*, 22 Cal.3d 865, does not support defendants' contention. The brief reference in *Clemmer* to a "preconceived design to inflict injury" must be read in context. The inquiry in *Clemmer* was limited to the unresolved *mental capacity* of the insured, i.e., whether he was legally sane when he committed the killing. There was no issue as to whether the insured intended to shoot his victim five times (including once in the head at close range) but not to harm the victim. The dissenting Court of Appeal justice in this case correctly recognized that "the only question in *Clemmer* was the *mental capacity* of Lovelace to intend the act; there was no holding by the Supreme Court in *Clemmer* that intent to injure, standing alone, was a dispositive issue . . . . [¶] The discussion on subjective and objective intent is misplaced unless one has evidence regarding a lack of intent to commit the act itself as was present in *Clemmer* where the defense at both the criminal and civil trials was that Lovelace was insane and did not have the mental capacity to perform the act." (Italics added.) Other Court of Appeal decisions denying coverage for child molestation have also recognized that the *Clemmer* discussion of a "preconceived design" was limited to the insured's mental capacity to commit the wrongful act. (*Allstate Ins. Co.* v. *Kim W.* (1984) 160 Cal.App.3d 326, 333-334 [206 Cal.Rptr. 609].)

The *Clemmer* court, *supra*, 22 Cal.3d 865, took the phrase "preconceived design to inflict injury" from *Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d 776. In *Walters*, an insured was seeking reimbursement of the amount paid to a third party to settle the latter's claim that he had been battered by the insured. The insured admitted he had intentionally struck the third party but claimed that he had done so in self-defense. The insurer contended the self-defense motive was irrelevant, because the insured's intentional act of striking the third party was sufficient to exclude coverage. The *Walters* court disagreed: "If plaintiff [the insured] acted in self-defense then although he 'intended the act,' plaintiff acted by chance and without a preconceived design to inflict injury . . . . [A]n element of *wrongfulness or misconduct* is connoted by an exclusion provision drafted as in the present case. Such a construction would also be consonant with the public policy provision in section 533 of the Insurance Code [¶] Acts committed in

self-defense are not unlawful." (*Walters, supra,* 185 Cal.App.2d at p. 783.) The insured's motive (self-defense) was relevant only to the question of whether he acted wrongfully in the first instance. Because child molestation is always wrongful as a matter of law, the insured's intent (or motive) is irrelevant under *Walters,* the primary case on which the court relied in *Clemmer, supra,* 22 Cal.3d 865.

The other decision cited in *Clemmer, supra,* 22 Cal.3d 865, in connection with the notion of "preconceived design" was *Meyer* v. *Pacific Employers Ins. Co., supra,* 233 Cal.App.2d 321 (*Meyer*). The phrase "preconceived design" is not in *Meyer* and, in any event, that case also fails to support defendants' view.[12] The *Meyer* court did not base its decision on either section 533 or an intentional act exclusion in the insurance policy at issue. (233 Cal.App.2d at p. 325.) Rather, the court construed a policy provision providing coverage for accidents. A business had drilled a water well on property adjacent to that of the plaintiffs. Drilling vibrations damaged buildings on the plaintiffs' property, and they obtained a judgment against the drillers based on a finding they had " 'intentionally caused an indirect trespass.' " (*Id.,* at p. 323.) The trial court, however, found the drillers were unaware of the vibrations they had caused and had not been negligent.

The plaintiffs then sought to recover the amount of their judgment from the drillers' liability insurer. It was undisputed that the drilling was intentional, but there was no evidence the drillers intended to harm the plaintiffs' property. (As noted above, the first trial court found they had been unaware of the vibrations.) The Court of Appeal held the damage was an "accident" within the meaning of the policy, stating that if "the damage or injury is not intentional and is unexpected it is accidental in character." (*Meyer, supra,* 233 Cal.App.2d at p. 327.) *Meyer* does not support defendants' view that coverage applies unless the insured acted with a subjective intent to injure. To the contrary, *Meyer* makes clear that coverage is excluded in this case. The court explained that if the drillers ". . . had not only intentionally trespassed on plaintiffs' property but had by design destroyed a crop or improvement thereon it could not be held that they could assert that the damage was accidental . . . ." (*Id.,* at p. 326, fn. 2.) For example, the trespassers could not intentionally set fire to a crop and then disclaim any

---

[12] The *Clemmer* court, *supra,* 22 Cal.3d 865, noted that it was relying on *Meyer, supra,* 233 Cal.App.2d 321, not as direct support, but only for purposes of background information. The *Clemmer* court did so by using the citation signal "see also," which at that time meant "Cited authority provides background to a question analogous to that examined in text, which can profitably be compared with it." (Harvard Law Review Association, A Uniform System of Citation (12th ed. 1976) § 2.3, p. 7.) The signal's meaning has since been changed to indicate that the cited authority provides specific support for the stated proposition. (Harvard Law Review Association, A Uniform System of Citation (14th ed. 1986) § 2.2(a), p. 10.)

intent to harm the crop. *Meyer* does not support the argument in this case that one can sexually abuse a young child but intend no harm.

Properly understood, *Clemmer*, *supra*, 22 Cal.3d 865, and the cases on which it relied do not support defendants' view. Because the wrongful *act* of child molestation is itself the *harm*, section 533 does not require a showing of the insured's subjective intent to harm. Likewise, *Clemmer* does not require a showing by the insurer of its insured's "preconceived design to inflict harm" when the insured seeks coverage for an intentional and wrongful act if the harm is inherent in the act itself. Section 533 precludes coverage in this case because child molestation is *always* intentional, it is *always* wrongful, and it is *always* harmful. Except in the present case, every Court of Appeal to consider the question has also concluded that section 533 precludes coverage for molestation.

### C. *Court of Appeal molestation decisions*

The issue was first presented in *Allstate Ins. Co.* v. *Kim W., supra,* 160 Cal.App.3d 326 (*Kim W.*), where, as in this case, an insured admitted child molestation in violation of Penal Code section 288. The court concluded that as a matter of law "a violation of Penal Code section 288 is a wilful act within the meaning of Insurance Code section 533." (160 Cal.App.3d at p. 333.) The court reasoned: "One who admits that his conduct violated [Penal Code] section 288 has admitted (1) a lewd or lascivious act upon a part of the body (2) of a child under the age of 14 (3) *with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of either the perpetrator or the child*." (*Id.*, at p. 332, italics added.) We agree. By admitting that he intended to arouse, appeal to, or gratify sexual desire with a child, a molester necessarily admits that he intended to harm the child. "Implicit in the [Legislature's] determination that children must be protected from such acts is a determination that at least some harm is inherent in and inevitably results from those acts." (*Id.*, at pp. 332-333.)[13]

---

[13] As an alternative ground for its holding of no coverage, the court in *Kim W., supra,* 160 Cal.App.3d 326, concluded that the insured had admitted in the declaratory relief action by his insurer that his conduct was intentional. The facts in this case are essentially identical and support the same conclusion. As in *Kim W.*, the insurer's complaint for declaratory relief alleges that the policy does not provide coverage for intentional acts. The insured's answer does not allege that his acts were not willful or that their harmful consequences were unexpected, or that he had no intent to harm his victim. To the contrary, he admitted under oath that his acts were intentional and that he knew they were wrongful. As in *Kim W.*, the insured's answer to the complaint "effectively admitted that his conduct was intentional." (*Id.*, at p. 333.) Moreover, in this case, the insured's testimony was a specific admission of intentional and wrongful misconduct. Because we agree, however, with the *Kim W.* court that child molestation is willful as a matter of law under section 533, we do not base our decision on the insured's admissions of wrongdoing. Neither an admission by the insured nor a criminal conviction is necessary to give rise to the exclusion under section 533.

The reference in *Kim W., supra,* 160 Cal.App.3d 326, to inevitable harm gets to the heart of the matter before us. Some acts are so inherently harmful that the intent to commit the act and the intent to harm are one and the same. The act is the harm. Child molestation is not the kind of act that results in emotional and psychological harm only occasionally. The contrary view would be absurd. Indeed, a recent federal decision well demonstrates the point. (*State Farm Fire & Cas. Co. v. Smith* (9th Cir. 1990) 907 F.2d 900 [construing Nev. law].) A father had repeatedly molested his 11-year-old daughter. As in the present case, he admitted that his acts were illegal and morally wrong, but he insisted he had meant no harm to the girl. "He explained that she had expressed a growing interest in boys, [and] he was concerned that she was not ready and [he] wanted to teach her what she needed to know as she matured sexually and began dating." (*Id.,* at p. 901.) The court rejected this distorted view of parental education. The only difference between *Smith* and this case is that here the molester attempts to support his argument with psychiatric testimony that molesters do not intend to harm their victims.

Except in the present case, every court since *Kim W., supra,* 160 Cal.App.3d 326, 332-333, has agreed that under California law child sexual molestation is not covered by a homeowner's liability policy. (*Fire Ins. Exchange v. Abbott, supra,* 204 Cal.App.3d 1012, 1022-1025; *Allstate Ins. Co. v. Gilbert* (9th Cir. 1988) 852 F.2d 449, 453; *State Farm Fire & Cas. Co. v. Estate of Jenner* (9th Cir. 1989) 874 F.2d 604, 607; *State Farm Fire and Cas. Co. v. Abraio* (9th Cir. 1989) 874 F.2d 619, 623; see generally Cal. Judges Association, Insurance Litigation (Rutter Dec. 1-3, 1989, San Diego) p. 13 [noting consistent denials of coverage for molestation].)[14]

Properly understood, defendants' argument is based not on the insured's intent, but on his motive. The gist of the argument is that his molestations were something akin to a misguided show of affection. In other words, his intent was to have sex with a child, but his motive was wholesome. (11) Motive is irrelevant for purposes of section 533. Motive is relevant only to the different question of whether the conduct was wrongful, thereby giving rise to liability. For example, an insured may intentionally shoot another person in the head at point-blank range. Obviously, the insured (if sane) intends to injure. Whether the conduct is wrongful, however, will depend on the insured's motive. For example, the motive may be self-defense. If a court finds that the insured acted justifiably, it necessarily follows that the insured did not act wrongfully. In that case, there is no liability, and the application of section 533 is not at issue. If, however, the motive for

---

[14] While the present case has been pending in this court, we have granted review of two other Court of Appeal decisions that have denied coverage for child molestation.

the shooting is determined to be robbery, the shooting would be wrongful and excluded from coverage by section 533. ■■■ There is no motive that can justify child sexual molestation. The insured's professed motive is therefore entirely beside the point for purposes of section 533.

### D. *Other states' decisions*

■■■ Although we are not bound by decisions of other states' courts, particularly in a case of statutory construction, they do reflect that our decision is in the mainstream on this issue. (*Brown* v. *Kelly Broadcasting Co.*, *supra*, 48 Cal.3d 711, 740-742; *Delaney* v. *Superior Court*, *supra*, 50 Cal.3d 785, 799, fn. 9.) To allow coverage for child molestation would be contrary to the almost unanimous rule in other states. (See generally 11 Ins. Litigation Rptr. (Shepard's/McGraw Hill June 1989) 289, 290-291.) We are not aware of any decision by a state's high court that allows coverage for child molestation. (*Allstate Ins. Co.* v. *Troelstrup* (Colo. 1990) 789 P.2d 415, 419; *Landis* v. *Allstate Ins. Co.* (Fla. 1989) 546 So.2d 1051, 1053.)[15]

The out-of-state authority was extensively reviewed recently in *Fire Ins. Exchange* v. *Abbott*, *supra*, 204 Cal.App.3d 1012, 1025-1028. We need not belabor the point with further analysis of those cases. Suffice it to say that in denying coverage other courts have relied in large part on a realistic view of child molestation. The view was well put by a Florida justice: ". . . I am absolutely unwilling to deny the foreseeability of injury to a child who is subjected to sexual abuse. It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended. That conduct inescapably inspires some response in the minor victim. Whether the response is a precocious excitation of libido, an utter revulsion or simply confusion, the child suffers grave psychological injury. Indeed, the fact that the ultimate goal of this litigation is to acquire funding to reconstruct Nicole's [the child's] emotional status is a testament to the soundness of my urging that we not accord slavish adherence to a principle [subjective intent to harm] that simply does not fit the context. The damage Nicole suffered flowed just as surely from Page's criminal acts as if he had taken his fist or a club and struck her in the face." (*Zordan by and through Zordan* v. *Page* (Fla. Dist. Ct. App. 1986) 500 So.2d 608, 613 (dis. opn. of Frank, J.).) We agree.[16]

---

[15] The New Hampshire Supreme Court initially seemed to allow proof of a molester's subjective intent. (*MacKinnon* v. *Hanover Ins. Co.* (1985) 124 N.H. 456 [471 A.2d 1166].) That court shortly thereafter adopted the contrary view. (*Vermont Mut. Ins. Co.* v. *Malcolm* (1986) 128 N.H. 456 [517 A.2d 800].)

[16] The Florida Supreme Court has disapproved the majority opinion in *Zordan by and through Zordan* v. *Page*, *supra*, 500 So.2d 608, 613, and has expressly adopted the reasoning of Justice Frank's dissent. (*Landis* v. *Allstate Ins. Co.*, *supra*, 546 So.2d 1051, 1053.)

### E. *Irrelevance of psychiatric testimony*

Defendants and their amici curiae argue at length that psychiatric testimony would show that child molesters are really sheep in wolves's clothing—that their abuse of children is an attempt at affection. We are *reluctant to venture into uncertain territory still being explored by psychiatrists.* We note, however, that testimony, psychiatric or otherwise, that no harm was intended flies " 'in the face of all reason, common sense, and experience.' " (*CNA Ins. Co.* v. *McGinnis* (1984) 282 Ark. 90 [666 S.W.2d 689, 691]; *Fire Ins. Exchange* v. *Abbott, supra*, 204 Cal.App.3d 1012, 1028 [characterizing such psychiatric testimony as being "inherently incredible"].) Such testimony is also irrelevant in light of the rule that a child molester's subjective intent is irrelevant to the question of insurance coverage. (204 Cal.App.3d at p. 1029; *Allstate Ins. Co.* v. *Troelstrup, supra*, 789 P.2d 415, 419.) Moreover, if psychiatry can satisfactorily corroborate defendants' view and demonstrate the need for a change in the law, the proper forum is in the Legislature, where broad-based, perhaps conflicting empirical evidence can be presented and considered.

### F. *Conclusion as to child molestation coverage*

We hold that as a matter of law section 533 excludes liability insurance coverage for an insured's sexual molestation of a child. An insured therefore cannot show or attempt to show that he subjectively intended no harm.

Some of the amici curiae briefs in this case have suggested that a decision denying coverage will encourage insurers to deny coverage for many other types of wrongdoing. Not so. We cannot emphasize too strongly to the bench and bar the narrowness of the question before us. The only wrongdoing we address is the sexual molestation of a child. Whether other types of wrongdoing are also excluded from coverage as a matter of law by section 533 is not before us.[17]

### DISPOSITION

We affirm the judgment of the Court of Appeal to the extent that it reversed the trial court judgment in favor of the mother, S. K. We reverse

---

[17] J. C. Penney also relies on its insurance policy's provision that provides coverage for an "occurrence," which is defined in the policy as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." Defendants have moved to strike J. C. Penney's "occurrence" argument on the ground that J. C. Penney did not properly raise the argument in the lower courts. Defendants' objection appears to have merit, but in light of our decision that section 533 excludes coverage, we need not and do not decide the question of whether child molestation is an "occurrence" within the meaning of the policy. Defendants' motion to strike is therefore dismissed as moot. We note, however, that the very notion of "accidental" child molestation is implausible.

the judgment of the Court of Appeal to the extent that it reversed the trial court judgment in favor of J. C. Penney and against the child, M. K. We remand to the Court of Appeal with directions to enter judgment in favor of J. C. Penney and against M. K. and S. K. J. C. Penney is awarded its costs on appeal.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., and Arabian, J., concurred.

**BROUSSARD, J.**—I dissent.

Our courts have long enforced insurance contracts for intentional and criminal acts causing injury. Rather than read Insurance Code section 533 (hereafter section 533) as precluding insurance for any willful act of the insured causing injury, such as intentionally speeding or running a red light, this court has interpreted the provision as only prohibiting enforcement of contracts insuring a person from losses intentionally caused. Thus in *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098], this court pointed out the "clear line of authority in this state to the effect that even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury.' [Citations.]" (Accord, *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 158-159 [181 Cal.Rptr. 784, 642 P.2d 1305]; *California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 32-33 [221 Cal.Rptr. 171]; *Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 849 [206 Cal.Rptr. 823]; *City Products Corp.* v. *Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 36, fn. 3 [151 Cal.Rptr. 494].)

The majority repudiate *Clemmer*. They hold that section 533 prohibits a person from insuring against conduct that is "inherently harmful." (Maj. opn., *ante*, at p. 1026.) The opinion's construction of the provision finds no support in the language of the provision. Such a construction fails to give sufficient consideration to the interest and rights of the innocent victims of child abuse and other crimes. The construction flies in the face of our constitutional command for the "enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime . . . ." (Cal. Const., art. I, § 28, subd. (a).) In addition, the majority's construction opens a Pandora's box such that insureds and insurers cannot know which promises of the insurer are enforceable.

The majority hold that the insured's intent to harm must be inferred from acts of child molestation because they are inherently harmful. (Maj. opn.,

*ante*, at p. 1026.) In view of the undisputed expert testimony in this case as well as some others that the child molester may have intended no harm, the majority appear to be practicing psychiatry without a license and doing a terrible job of it.

I

Section 533 provides in its entirety: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

The first portion of the section is reasonably subject to two constructions. First, it may be read as providing that if the insured's liability is predicated upon an intentional act, i.e., the insured intended to do the act that resulted in the loss, insurance coverage is prohibited. Such a construction has long been rejected by the courts. This would mean that if the insured intended to drive above the speed limit, there could be no insurance. The majority do not dispute that this is not the proper construction of the code section even when the act is criminal. (See maj. opn., *ante*, at pp. 1020-1021; *Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41, 50 [261 Cal.Rptr. 273]; *Meyer* v. *Pacific Employers Ins. Co.* (1965) 233 Cal.App.2d 321, 327 [43 Cal.Rptr. 542].) When speeding or reckless driving causes an accident, it is ordinarily clear that the insured did not intend to cause the loss and that the insured should be permitted to purchase insurance against the loss.

The second plausible construction of the language of the section is that the word "wilful" in the section relates to the caused loss or that the "act" referred to as a "wilful act" is an act intended to cause the loss. This is the construction placed on the section by *Clemmer* v. *Hartford Insurance Co.*, *supra*, 22 Cal.3d 865, 887, and the authorities it relied upon and those subsequently relying upon it. (See, e.g., *Peterson* v. *Superior Court*, *supra*, 31 Cal.3d 147, 158-159; *Allstate Ins. Co.* v. *Overton*, *supra*, 160 Cal.App.3d 843, 849; *Congregation of Rodef Shalom* v. *American Motorists Ins. Co.* (1979) 91 Cal.App.3d 690, 695 [154 Cal.Rptr. 348] et seq.; *Escobedo* v. *Travelers Ins. Co.* (1964) 227 Cal.App.2d 353, 360 [38 Cal.Rptr. 645]; *Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 783 [8 Cal.Rptr. 665].) It is also the construction of the Court of Appeal in the instant case.

While the language of section 533 is subject to the above two constructions, it is not reasonably subject to the construction the majority place upon it. The test of noninsurability is "wilful" under the code section whether it relates to "act" or "loss." In short, the test necessarily relates to intent. There is nothing in the 100-year-old code section (Code Amends. 1873-1874, ch. 612, § 242, p. 256) which warrants the conclusion that the

test should be whether the act is "inherently harmful," precluding insurability of unintended injuries.

Not only are the words of the code section contrary to the majority's test, but the principle established by the section furnishes no support for the test. The fact that section 533 provides for a distinction between "wilful" and negligent injuries does not authorize this court to adopt a vague test based on the degree of blameworthiness. All criminal conduct which may result in loss of our most precious asset, liberty, is harmful; but, as pointed out above, the majority do not dispute that section 533 does not bar insurance on the basis of criminality. The section does not establish a relative blameworthy test and does not permit this court to refuse to enforce insurer promises on a theory of blameworthiness.

It may be true that as to any particular act of misconduct causing injury, the act is more blameworthy when done with intent to injure than when done intentionally but without intent to injure. In this light, section 533, which prohibits insurance for intentionally injurious acts but extends insurance to negligent acts, is a statute designed to prohibit insurance for the more reprehensible conduct. But it does not follow that all acts done with intent to injure are more blameworthy than all negligent acts. Some negligent acts, depending on the consequences, may be viewed as more blameworthy than some intentional conduct. Most people would agree that the drunken driver who negligently kills four pedestrians is more blameworthy than the person who, intending to injure, intentionally strikes another on the arm, a battery, without permanent or even lasting injury. Conduct causing injury by chance is blameworthy conduct when there is negligence. Section 533 requires that insurance extend to repugnant and reprehensible conduct of the insured causing injury, including criminal conduct, and furnishes no basis for a vague test discriminating between criminal conduct.

A vague test based on degrees of blameworthiness would be so difficult to administer justly that it should be rejected out-of-hand. Attempting to draw a line between misdemeanors or between felonies on the basis of reprehensibility or repugnance on a case-by-case basis can only bring confusion and uncertainty to insurance law.

In any event, we rejected such a test in *Peterson* v. *Superior Court, supra*, 31 Cal.3d 147, 158-159. In that case we held that an intoxicated driver could be liable for punitive damages when it is shown that he performed an act from which he knows, or should know, it is highly probable that harm will result. Obviously, punitive damages are permitted only in cases involving the most reprehensible and repugnant conduct. In addition to the great likelihood of harm, which in fact occurred, the conduct was criminal. While

we held that punitive damages may not be indemnified, we also held that section 533 would not be applicable to bar indemnification of compensatory damages for conduct involving an extreme degree of blameworthiness.

A "wilful" act or loss is a reference to subjective intent, and, absent a clear showing of legislative intent to the contrary, it cannot reasonably be interpreted to establish tests of "inherently harmful." In short, the test established by the majority opinion finds no support in the language of the code section and must be rejected for this reason alone. To read "inherently harmful" into this straightforward statute can only be categorized as judicial legislation.[1]

Since there is no history or strong public policy indicating that the Legislature inadvertently used the language it chose, the plain language of the code section should end the case.

Moreover, even if there was some ambiguity in the language of the code section permitting it to be reasonably construed to prohibit insurance of "inherently harmful" conduct, considerations of the interests and rights of the innocent victims of child abuse and other crimes should preclude our doing so.

Liability insurance serves two functions in our society. It not only provides a fund that the wrongdoer may resort to in order to meet his just obligation, but also provides compensation for the victims of wrongful and criminal conduct. Often, the wrongdoer's insurance is the only way the innocent victims of crime, including child molestation, may recover compensation for medical expenses, their disabilities and their injuries. Particularly as to child molesters, the wrongdoers are likely to be incarcerated for lengthy periods of time (see Pen. Code, §§ 288, subd. (a), 1170.1), and there is little likelihood that a judgment recovered against the wrongdoer can be collected out of the wrongdoer's earnings. The wrongdoer will ordinarily be faced with substantial legal expenses depleting whatever assets he may have had. Liability insurers ordinarily pay to the innocent victim rather than the insured, so there is little danger that the wrongdoer insured will fatten his pocket from the insurance.

Concern for the innocent victims of crime outweighs the policy of deterrence or penalizing the wrongdoer and strongly militates against an

---

[1] The majority tell us that they decide only the wrongdoing before us, child molestation. (Maj. opn., *ante*, at p. 1028.) However, we can only expect that insurers will deny coverage in all or substantially all cases involving criminal conduct. All criminal conduct is "repugnant and reprehensible," and it will be for the courts to determine whether the particular conduct is so "repugnant and reprehensible" as to preclude insurance coverage.

interpretation expanding section 533's prohibition of insurance coverage. (Fischer, *The Exclusion From Insurance Coverage Of Losses Caused By The Intentional Acts Of The Insured: A Policy In Search Of A Justification* (1990) 30 Santa Clara L. Rev. 95, 96-99; Grellmann, *Insurance Coverage For Child Sexual Abuse Under California Law: Should Intent To Harm Be Specifically Proven Or Imputed As A Matter Of Law?* (1988) 18 Sw. U. L.Rev. 171, 173-179.)

If there were any doubt as to the proper balance of competing policies, it is set at rest by our Constitution. Article I, section 28, subdivision (a) commands the "enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime." When we indulge in judicial legislation, we should observe the mandates of our Constitution applicable to legislation.

The majority point to some out-of-state authorities which have denied liability coverage for child molestation under the wording of the policies involved, and to some permitting liability. (Maj. opn., *ante*, at p. 1027; compare *MacKinnon* v. *Hanover Ins. Co.* (1985) 124 N.H. 456 [471 A.2d 1166] [permitting recovery] with *Vermont Mutual Ins. Co.* v. *Malcolm* (1986) 128 N.H. 521 [517 A.2d 800] [denying coverage].) Those cases are not concerned with a statutory prohibition on insurance but with the interpretation of contract provisions.[2] In a related situation, we have recognized that a psychiatrist's malpractice insurance might apply in a case charging sexual misconduct. (*Waters* v. *Bourhis* (1985) 40 Cal.3d 424, 433-436 [220 Cal.Rptr. 666, 709 P.2d 469].)

In sum, the language of section 533 prohibits liability insurance for intentional injury but cannot reasonably be interpreted to prohibit insurance for "inherently harmful" conduct generally, and concerns for the innocent victims of crime militate against adoption of a rule prohibiting insurance.

II

Upon analysis, the majority theory that we must infer intent to harm from child abuse fares no better. We cannot properly infer from child molestation the intent to harm as a matter of law in the face of an overwhelming record establishing that there was no intent to harm or even in the absence of such a record. Penal Code section 288, subdivision (a)

---

[2] Contrary to the suggestion in the majority opinion (maj. opn., *ante*, at p. 1027, fn. 15), the case of *Vermont Mutual* may not be read as overruling *MacKinnon*. *Vermont Mutual* does not cite or mention *MacKinnon*. The bases of both decisions were the policy provisions. Not only were they decided closely in time but Justice Souter, the author of the *Vermont Mutual* opinion, was the trial judge in *MacKinnon*.

provides: "Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the *intent* of arousing, appealing to, or gratifying the lust or passions or sexual desires of that *person or of the child*, shall be guilty of a felony . . . ." (Italics added.) It is clear from the italicized portion of the code section that child molestation under the section is based on the intent of the wrongdoer and that the wrongdoer may be guilty of the crime on the basis of gratifying his lust or sexual desires without regard to those of the victim. Until today, at least, neither harm to the child nor intent to harm the child was an element of the offense. Accordingly, the insured's guilty plea to one count of child molestation does not establish intent to injure.

The physical acts of child molestation are not detailed in the statute; rather, the crucial factor is the intent of the actor. The physical acts may be of a wide variety, including acts which are commonly engaged in for medical or hygienic purposes by parents, siblings, and pediatricians. However, when such acts are done with the specified intent, the conduct is criminal. The point is illustrated by the instant case where 25 of the acts of child molestation occurred while the insured was playing with the child. He touched or fondled her vaginal area while she was fully clothed. Absent criminal intent, the physical conduct would be entirely innocent. I cannot agree that the physical conduct is "inherently harmful" or that we must as a matter of law infer from such conduct, even when coupled with an intent to gratify sexual desires, that there was an intent to harm.

The expert testimony was all to the effect that there was no intent to harm. The majority opinion quotes the statements from other cases that such testimony "flies 'in the face of all reason, common sense, and experience' and is 'inherently incredible.' " (Maj. opn., *ante*, at p. 1028.) There is nothing in our record to justify this shocking attack on the science of psychiatry. Neither the majority opinion nor the cited authorities provide any empirical evidence for such an attack, and the experience involved is that of child molesters and those who work with child molesters, not judges. In the absence of experience, judges should not undertake to practice psychiatry. The opinion also states that the psychiatric testimony was "irrelevant" (*ibid.*) but, as pointed out above, much of the physical conduct was not inherently harmful. It consisted of physical acts which, if done without criminal intent, would be lawful and innocent and not harmful at all. I do not find any reasonable basis to reject the expert testimony, and we should not do so.

## III

In cases of child molestation there is a danger that juries, out of outrage at the conduct of the molester, will inflate damages in an effort to punish him. The danger that juries may award excessive damages, however, does not justify withholding insurance benefits from the innocent victim of the crime. Our legal system in many situations has dealt with the problem of excessive damages. The jury in molestation cases should be carefully instructed that compensatory damages must compensate for the injury suffered and may not be used to punish the wrongdoer. Further, trial judges are authorized and fully competent to deal with excessive awards.

In my view, the language of section 533 and consideration of the rights of innocent victims of crime require that we should adhere to the unanimous opinion in *Clemmer* v. *Hartford Ins. Co.*, *supra*, 22 Cal.3d 865, the authorities upon which it relied and the cases which have followed it. We should continue to hold that "even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury.'" (22 Cal.3d at p. 887.) When the expert testimony establishes that there was no intent to harm, we should permit the jury to give effect to it and should reject the claim that intent to harm must be inferred as a matter of law from child molestation.

When insurers have collected premiums and agreed to indemnify liability imposed for child molestation, we should require them to perform their promises. The interests and rights of the innocent victims of child abuse preclude our exonerating such insurers.