[Civ. No. 31663. Fourth Dist., Div. One. May 30, 1985.]

MICHAEL A. JAFFE, Plaintiff and Appellant, v.
CRANFORD INSURANCE COMPANY, et al.,
Defendants and Respondents.

COUNSEL

Tom Adler for Plaintiff and Appellant.

Harold J. Hunter, Jr., Gregory M. Hulbert and Kirtland & Packard for Defendants and Respondents.

OPINION

WIENER, J.—When child psychiatrist Michael A. Jaffe was prosecuted for Medi-Cal fraud and theft, he requested his malpractice insurer Cranford Insurance Company, doing business as American Special Risk Insurance Company, provide his criminal defense. He made his request through Excelsior Adjustors, Ltd., authorized claims agent of Cranford and American. The insurers (Cranford) refused to defend him.

The jury found Jaffe innocent of all charges and the superior court made a finding of fact that Jaffe's alleged criminal conduct was the result of mistakes and/or errors in submitted billings.[1] Afterwards Jaffe made a demand for reimbursement for expenses including attorney's fees incurred in his criminal defense. Following denial of his second demand, Jaffe filed suit

---

[1]The superior court made its finding under Penal Code section 851.8, subdivision (e).

against his insurer for tortious breach of contract. Cranford's demurrer was sustained without leave to amend. Jaffe appeals the judgment of dismissal.[2]

Jaffe makes several arguments each of which advances in a different way the same contention that Jaffe's malpractice insurance policy should have covered attorneys' fees and costs arising from his defense against criminal charges. Each of Jaffe's arguments is disposed of by our conclusion there was no potential policy coverage arising from the criminal action against Jaffe and, hence, no duty to defend.

Jaffe's insurance policy with Cranford is entitled "Policy of Malpractice Insurance." It describes the insured risk as "Psychiatrist's Professional Liability in respect of Assured's practice of Psychiatry." Of the several clauses of the policy which define Cranford's obligation to pay, only Clause (1a) is relevant for our purposes. It provides, in essence, that Cranford "agrees . . . to pay . . . such damages as may be awarded" against Jaffe "in respect of professional services rendered by him in his practice of psychiatry, or which should have been rendered by [him] . . . resulting from any claims or suits . . . based solely upon malpractice, error, . . . or mistake . . . ."[3] Clause (14) excludes coverage for damages awarded in six categories of suit including suits "arising out of the performance of criminal acts."

Jaffe suggests the plain language of the policy provides for payment of his litigation costs because they were incurred in a claim or suit which, as it turns out, was "based solely upon . . . error, . . . or mistake . . . ." He concludes the "criminal act" exclusion is accordingly irrelevant since the judge found he had committed no criminal acts but rather only mistakes and/or errors.

Jaffe's argument confuses the insurer's obligation to pay with its duty to defend, and in doing so ignores the relationship between the two concepts. It is true the duty to pay damages is not necessarily coextensive with the duty to defend. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 271-272 [54 Cal.Rptr. 104, 419 P.2d 168].) This conclusion results from the "necessarily uncertain" nature of the obligation to defend. (*Id.*, at p. 271.) It is possible, for instance, that an insured may be entitled to legal defense against a cause of action even though the insurer is ultimately pro-

---

[2]Although Jaffe purports to appeal from the order sustaining the demurrer, we amend the order to incorporate a judgment of dismissal and treat the appeal as from the judgment. (*McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798, 800 [159 Cal.Rptr. 86]; *Bellah* v. *Greenson* (1978) 81 Cal.App.3d 614, 618, fn. 1 [146 Cal.Rptr. 535, 17 A.L.R.4th 1118].)

[3]The coverage also extends to any claim or suit arising from his professional services based on negligence, breach of employment contract, loss of services, property damage, personal restraint, assault, anesthesia and hallucinations. We are at a loss to understand what some of these bases for suit mean in the context of psychiatric services.

hibited from paying losses arising therefrom. (*Id.*, at pp. 271-272; *St. Paul Fire & Marine Ins. Co.* v. *Weiner* (9th Cir. 1979) 606 F.2d 864, 869.) As long as the potentiality of coverage exists, the duty to defend also exists. (*Gray* v. *Zurich, supra,* 65 Cal.2d at pp. 276-277.)

It is also fair to say, however, that the duty to defend derives from the insurer's coverage obligations assumed under the insurance contract. That is only to say where there is *no potential* for coverage, there is no duty to defend. (See *Gray* v. *Zurich, supra,* 65 Cal.2d at pp. 276-277.) ■ In the present case, the outcome of Jaffe's criminal case could not result in damages payable under the policy since neither imprisonment nor a fine constitutes "damages" for insurance purposes. In addition, the limitation excluding coverage for damages arising from criminal charges precludes the possibility of coverage by Cranford.[4] Jaffe responds, of course, that he was found *innocent* of the criminal charges, but that simply means that the criminal "suit"[5] against him resulted in no penalty, financial or otherwise, for which Cranford is obliged to pay. As we have pointed out, the critical question under *Gray* is not whether the insurer is ultimately determined to be liable but only whether such a potential existed at the time the insured's defense must be commenced. In the present case, there is no conceivable set of facts under which Cranford could be liable for the result in the criminal case.

Jaffe then points, however, to provisions of the Welfare and Institutions Code which allow for civil recovery of funds overpaid to health care providers by Medi-Cal. (See Welf. & Inst. Code, §§ 14170 et seq.; see especially § 14172.)[6] He argues the plaintiff's choice of action should not determine the insurer's duty to defend. Implicit in Jaffe's argument is the contention that had the Attorney General sought repayment of the funds in a civil action, his policy would have covered any award against him.[7]

---

[4]Contrary to Jaffe's assertion, this exclusionary clause is neither ambiguous nor uncertain. (*Gray* v. *Zurich, supra,* 65 Cal.2d at p. 273.) The entire policy is only three pages long. While Clause (14) is not printed in bold type neither is it buried from view in long and complicated pages of fine print. The bold type exclusion for shock treatment (Clause (13)) is appropriately highlighted in a Psychiatrist Malpractice Policy. By contrast, except for section (14)(b), the exclusions of Clause (14) are common to insurance policies of various types and require less emphasis. The relative emphasis placed on each accords with the reasonable expectations of an insured under this type of policy.

[5]We question whether the terms "claim" and "suit" as they appear in the policy can reasonably be interpreted to apply to other than a civil action.

[6]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[7]Jaffe attempts to treat the civil recovery provisions of section 14170 et seq. as though the Attorney General can choose to file either a civil or criminal action based on alleged overpayments. Such treatment is not totally accurate. The section 14170 procedure is basically an administrative process by which the Director of Social Services can obtain a summary

Such a contention interprets the term "damages" as it appears in Clause (1a) far too broadly. "Damages" describes a payment made to compensate a party for injuries suffered. The remedy provided for in sections 14170 et seq. is more properly characterized as restitutionary rather than compensatory in nature. The defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct. At least absent demonstrably unusual circumstances, we have doubts whether an insurance policy which purported to insure a party against payments of a restitutionary nature would comport with public policy. Although the concept of "restitution" may have a broader meaning in other contexts, we limit our reference to it here to situations in which the defendant is required to restore to the plaintiff that which was wrongfully acquired. ■ In any event, Jaffe's policy is limited to coverage for "damages" awarded against him. We have no trouble concluding that payments of a restitutionary nature, if sought by the state pursuant to sections 14170 et seq., are not "damages" within the meaning of Jaffe's policy.[8]

■ Finally, Jaffe contends notwithstanding any language in the policy regarding *coverage,* the clause of the policy dealing specifically with Cranford's duty to defend guarantees his legal defense in *any* suit filed against him, regardless of its nature. Clause (4) of the policy provides Cranford will defend ". . . *any* suit against the Assured, and *subject to the conditions and limitations contained in this insurance,* and, provided the Company has not already elected to pay the limit of their liability as provided for in this insurance, to furnish any bonds not exceeding in amount the minimum limit of this insurance which may be incidentally necessary to such suits for appeals or the release of attachments or garnishments." (Italics added.) Cranford responds to Jaffe's interpretation of Clause (4) by pointing out the "subject to . . ." language defeats Jaffe's broad assertion. ■ ■ ■ ■ According to Cranford, since the policy excludes payment for damages resulting from criminal acts, legal defense to criminal charges is also excluded.[9]

---

judgment against a health care provider to recover Medi-Cal overpayments. (§ 14172.) The process becomes a civil action only if the provider seeks judicial review of the Director's decision under the provisions of Code of Civil Procedure section 1094.5. (See § 14171, subd. (d).)

[8]We further note that the statutory scheme appears to contemplate criminal charges *in addition to* restitutionary civil recovery *in cases where the defendant intentionally overbilled the state in conjunction with Medi-Cal payments.* (See § 14107.)

[9]Cranford argues this reading of the policy is in accord with the policy codified in Insurance Code section 533 which reads in relevant part: "An insurer is not liable for a loss caused by the wilful act of the insured . . . ." There is no question but that " 'an insurance policy indemnifying the insured *against* liability *due to his* [or her] *own wilful wrong is void as against public policy.'* " (*Nuffer* v. *Insurance Co. of North America* (1965) 236 Cal.App.2d 349, 354 [45 Cal.Rptr. 918].) However, Insurance Code section 533 is inapplicable to a determination of rights under this policy. Although section 533 is impliedly

In effect, Jaffe attempts to convert his malpractice policy into an insurance policy for comprehensive legal services. The policy clearly indicates this was not the intent of the parties at the time the insurance contract was entered into. Read in proper context, Clause (4) does no more than incorporate the *Gray* v. *Zurich* duty-to-defend concept into the policy.[10] As we have explained, that concept applies only where there is potential coverage under the policy. We will not rewrite this policy to fasten on the insurer liability it did not assume and which the insured could not reasonably expect existed. (See *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 219 [169 Cal.Rptr. 278].)

Judgment affirmed.

Brown (Gerald), P. J., and Work, J., concurred.

---

written into every insurance contract (*Maxon* v. *Security Ins. Co.* (1963) 214 Cal.App.2d 603, 615 [29 Cal.Rptr. 586]), this provision restricts the possible liability of insurers for losses. It does not restrict the insurer's right-to-contract to provide legal services. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 277.) Nor do we think the policy behind section 533 necessarily precludes such coverage. We do assume, however, the policy behind section 533 would prohibit coverage for fines resulting from a criminal conviction.

[10]If the intent underlying Clause (4) were otherwise, it would make no sense to limit Cranford's duty to defend to situations in which it had "not already elected to pay the limit of [its] liability" under the policy.