In the
United States Court of Appeals
For the Seventh Circuit

Nos. 98-2043 & 98-2262

Elizabeth Karlin, M.D.; Planned Parenthood
of Wisconsin, Inc.; Gary T. Prohaska, M.D.;
and Summit Women's Health Organization,
on behalf of themselves and their patients
seeking abortions,

Plaintiffs-Appellants, Cross-Appellees,

v.

C. William Foust, in his official
capacity as District
Attorney for Dane County and a representative of
the class of all district attorneys in Wisconsin;
James E. Doyle, in his official capacity as Attorney
General of Wisconsin; et al.,

Defendants-Appellees,

and

E. Michael McCann, in his official capacity as
District Attorney for Milwaukee County,

Defendant-Appellee, Cross-Appellant.


Appeal from the United States District Court
for the Western District of Wisconsin.
No. 96 C 374--Barbara B. Crabb, Judge.


On Petition for Rehearing
and Petition for Rehearing En Banc


Submitted August 23, 1999--Decided December 30, 1999


  Before Cudahy, Coffey and Kanne, Circuit Judges.

  On consideration of the petition for rehearing,
all the judges on the panel voted to deny the
petition for rehearing. It is, therefore, ORDERED
that the petition for rehearing is DENIED.

  A vote was requested on the petition for rehearing
en banc. Chief Judge Posner, and Circuit Judges
Rovner, Diane P. Wood, Evans and Williams voted to
grant rehearing en banc; Circuit Judges Coffey,
Flaum, Easterbrook, Manion and Kanne voted to deny
rehearing en banc. Circuit Judge Ripple took no

part in the consideration or decision of this case.

The vote for en banc review failed to obtain a majority of the judges in regular active service, as required by the Federal Rule of Appellate Procedure 35(a), and en banc review cannot be granted. It is, therefore, further ORDERED that the petition for rehearing en banc is DENIED.

Judge Diane P. Wood dissented from the denial of rehearing en banc and filed an opinion which was joined by Chief Judge Posner, Judge Rovner, Judge Evans and Judge Williams.

DIANE P. WOOD, Circuit Judge, with whom POSNER, Chief Judge, and ROVNER, EVANS and WILLIAMS, Circuit Judges, join, dissenting from denial of rehearing en banc. On October 26, 1999, this court sitting en banc issued its opinion in two cases dealing with the constitutionality of the Wisconsin and Illinois laws regulating what in lay terms is known as "partial birth abortion." See The Hope Clinic v. Ryan and Christensen v. Doyle, 1999 WL 974098 (7th Cir. Oct. 26, 1999) ("Hope Clinic"). The approach the majority in those cases took toward the scienter requirement that must apply in order to save the statutes from vagueness is fundamentally inconsistent with the panel's opinion in the present case. Such inconsistency is never desirable, but it is especially regrettable in an area as sensitive as abortion. Because we will not be rehearing this case en banc, district judges and later panels of this court will have no idea when a subjective scienter standard is constitutionally required, when an objective standard suffices, or whether a given statute must be construed to impose one or the other kind of requirement. This does no favor to anyone or anything, least of all to the orderly development of the law in this circuit. I therefore dissent from the decision by the equally divided court not to rehear this case en banc.

I begin with the proposition that, without the benefit of some kind of knowledge standard, both the partial-birth abortion statutes at issue in Hope Clinic and the emergency procedure exception to the Wisconsin "informed consent" statute fail the constitutional vagueness test. As the panel in the present case noted, vagueness exists when the prohibitions of the laws are not clearly defined, see Grayned v. City of Rockford, 408 U.S. 104, 108 (1972), because (a) they do not provide fair warning of what is prohibited, and (b) they do not contain an explicit and ascertainable standard to prevent enforcers of

the law from engaging in arbitrary and discriminatory enforcement. See Karlin v. Foust, 188 F.3d 446, 458-59 (1999).

In Hope Clinic, the majority fended off the argument that the Wisconsin and Illinois partial-birth abortion statutes were unconstitutionally vague by advising that the state courts might construe the statutes in one of three related ways (each of which in its view would save their constitutionality)--using "brute force," see 1999 WL 974098 at *6, a rigorous implicit scienter requirement, or a "core-plus-common-law," see id. at *10, approach. But while there were three alternatives, the basic point of Hope Clinic is that at least one of these methods is unquestionably necessary to save the statutes. Since the Karlin panel avoided a foray into possible saving constructions of "medical emergency," only the Hope Clinic majority's scienter alternative is relevant to an analysis of Assembly Bill 441 ("AB 441"), codified at Wis. Stat. sec. 253.10. Hope Clinic upheld the partial-birth abortion statutes by assuming that the state courts would impose liability only for acts that physicians subjectively knew were in violation of the law and which they intentionally performed in defiance of that knowledge. It did this by reading into both state laws a very specific mental state requirement, under which the physician in question must "know that the medical procedure being performed is a 'partial-birth abortion' and not simply that the physician know that he is performing particular acts." Id. at *8. To drive the point home, the majority explained further that "[t]he question here is not whether a physician understands the terms of [the Wisconsin statute] in the abstract, but whether the physician intends that the plan of action add up to a 'partial-birth abortion.'" Id. (emphasis added). Both this language and the majority's explicit reliance on the Supreme Court's decisions in Screws v. United States, 325 U.S. 91 (1945), Staples v. United States, 511 U.S. 600 (1994), and United States v. X-Citement Video, Inc., 513 U.S. 64 (1994), make it clear that a scienter requirement that could (in the majority's view) save the partial birth abortion statutes from unconstitutional vagueness would necessarily be both strict and subjective.

I continue to believe that the approach of the majority in Hope Clinic does nothing to cure the vagueness inherent in the two partial-birth abortion statutes. No matter how often the word scienter is uttered, a doctor will still need to know whether the procedure she is setting out to perform will be illegal under the statutory definition or not, and in my view, this will be impossible given the way these laws are worded.

Nonetheless, even if one subscribed wholeheartedly to the majority's approach in Hope Clinic, Karlin still cries out for en banc attention. In Karlin, the physician plaintiffs raised a vagueness challenge to a different part of the Wisconsin abortion laws, the sections dealing with informed consent. See AB 441. The district court upheld the law in large part, and I do not take issue here with most of its rulings and the panel's opinion treatment of those rulings. My concern focuses on the first point discussed in the panel's opinion, which is whether "AB 441's 'medical emergency' is unconstitutionally vague because it relies on an objective standard for evaluating a physician's decision to perform an emergency abortion." Karlin, 188 F.3d at 458. When the exception, codified at sec. 253.10(3)(f), applies, physicians are relieved of their ordinary statutory responsibilities to observe a 24-hour waiting period and to furnish certain information before performing the chosen procedure. The statute defines "medical emergency" as follows:

[A] condition, in a physician's reasonable medical judgment, that so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a 24-hour delay in performance or inducement of an abortion will create serious risk of substantial and irreversible impairment of one or more of the woman's major bodily functions.

Id. sec. 253.10(2)(d).

The terms used in this statute are every bit as uncertain as the terms used in the partial-birth abortion statutes. The criteria that entitle the physician to forego the 24-hour waiting period and provision of the required information include (1) a "serious risk" of (2) "substantial and irreversible impairment" of a (3) "major" bodily function. Ascertaining whether any of these is present in a particular case requires the exercise of sophisticated medical judgment. Today's serious risk may become manageable tomorrow; impairments that are believed to be irreversible today may turn out to be treatable tomorrow; the level and treatability of risk may depend on whether the patient is in an isolated rural facility or in a sophisticated urban teaching hospital. While it is possible for a physician to exercise her subjective best judgment on each of these points, they do not lend themselves to objective precision. Put another way, they are far too vague to serve as the supporting criteria for an objective standard of liability.

Addressing only the "fair warning" aspect of the vagueness analysis, the Karlin panel has concluded that AB 441 passes muster; it pays little or no attention to the risk of arbitrary enforcement, finding paradoxically that if someone can define ex post what would have been reasonable under the circumstances, that is enough to create an explicit and ascertainable standard to govern the physician's actions ex ante. There are many problems with this approach, beginning with the fundamental assumption that underlies this section of the opinion, namely, that the state statute actually creates an objective standard for evaluating the physician's decision. Karlin, 188 F.3d at 459. The panel accepts as a given that the phrase "reasonable medical judgment" must refer to an objective standard, and then it tackles the question whether an unvarnished objective standard is constitutionally permissible in this context. Perhaps it is correct to do so; words are not infinitely malleable, and courts sensitive to their role as interpreters of law rather than drafters must take what legislatures have given them. If, however, there were any basis in Wisconsin law for thinking that the Wisconsin Supreme Court might interpret the statute as including a subjective standard, then it should certainly be given the opportunity to do so, as Judge Cudahy argued in his dissenting opinion. Few would disagree that, in the light of Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833 (1992), the statute would be more difficult to criticize if there were a subjective element in AB 441 that had to be satisfied before liability could be found. In other areas of the law unencumbered by a statutory "reasonableness" criterion, it is common to find a dual objective and subjective test. For example, both subjective awareness of risk and objectively unreasonable conditions must be demonstrated in order to raise a successful Eighth Amendment challenge, see Farmer v. Brennan, 511 U.S. 825, 846 (1994); both objective and subjective hostility are also required before a plaintiff may prevail on a sexual harassment claim, see Harris v. Forklift Sys., 510 U.S. 17, 22 (1993). It is important to recognize that the panel's interpretation of the Wisconsin statute is nothing more than a federal court's guess at what the state law means; it is not binding on the Wisconsin courts. Without ruling out the possibility of a different interpretation, however, I proceed on the same basis as that of the panel, namely, that AB 441 requires the exclusive use of an objective standard.

The "medical emergency" provision of AB 441 requires, by definition, a prompt judgment by the attending physician that the woman requires

urgent attention--as the statute puts it, she has a medical condition that "necessitate[s] the immediate abortion of her pregnancy to avert her death or for which a 24-hour delay will create a serious risk of substantial and irreversible impairment of one or more of the woman's major bodily functions." sec. 253.10(2)(d). If a physician making this kind of on-the-spot judgment turns out in hindsight to have been wrong--that is, if a calm after-the-fact review indicates that the 24-hour delay would have made no difference, or that only a minor bodily function would have been impaired, or that any impairment might have been reversible--she faces a forfeiture penalty of anywhere from $1,000 to $10,000, see sec. 253.10(5). On top of that, she may be liable to the woman for compensatory damages, punitive damages, and attorneys' fees. sec. 253.10(6). Last, and potentially most importantly, she may be subject to professional discipline, including revocation of her license. sec. 448.02(3)(a).

The panel brushes off this penalty structure with the observation that physicians are accustomed to plying their trade under the shadow of traditional tort law, which subjects their actions to the objective standard of reasonableness. This fact, it implies, means that a physician has fair warning before the fact that her emergency judgments either will or will not pass the statutory reasonableness test. In my view, however, the analogy to tort law is not helpful here. In order to be liable in tort, it does not matter if a particular individual knew that his actions were reasonable or not; the law simply allocates risk as between a wrongdoer and a victim according to objective principles (i.e. strict liability, negligence, gross negligence). Fair warning is crucial for a statute that draws a line between constitutionally protected conduct, such as free speech or the right to choose an abortion, and unprotected behavior. The informed consent statute draws such a line, and worse, as Judge Cudahy pointed out, its forfeiture provision imposes quasi-criminal penalties for those who cross the line. Unlike medical malpractice, which is a risk that any prudent doctor will purchase insurance to cover, criminal violations and their equivalents are uninsurable. Cieslewicz v. Mutual Service Casualty Ins. Co., 267 N.W.2d 595, 599 (Wis. 1978), quoting Northwestern Nat'l Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962). See also Michael A. Jaffe, M.D. v. Cranford Ins. Co., 168 Cal. App. 3d 930, 935 n.9 (1985). To the extent the doctor is genuinely uncertain about whether the woman's condition is a statutory "emergency," this statute leaves her in an impossible position. If she performs the procedure and in

hindsight a jury decides that the situation was not urgent enough, she faces uninsurable quasi-criminal penalties, civil liability, and the loss of her license. If she fails to perform the procedure and the emergency was genuine, her patient is either dead or irreversibly harmed--either of which might lead to a malpractice action, which insurance would normally cover. Note, however, that in the absence of this statute there would be no risk of liability if she performed the abortion successfully, but acted more promptly than was strictly necessary.

Faced with the same problem in Hope Clinic, the majority chose to save the partial-birth sections of the Wisconsin and Illinois statutes by following the assertion of the two Attorneys General that they would be construed to cover only those cases in which the performing physician intends to perform the D&X procedure. To quote from the majority's opinion, 1999 WL 974098 at *8, "under [the Wisconsin and Illinois] laws a procedure may be deemed a 'partial-birth abortion' only if at the outset of the procedure the physician intends to perform all of the steps that mark the D&X." Not only must the physician have this subjective intent, but, according to Hope Clinic, no liability can result unless the physician also has actual knowledge of the legal rules in question. Id. Without such knowledge and intent, even if an objective assessment after-the-fact reveals that the statutory elements of the partial-birth abortion statutes were satisfied, the physician has not violated the law because the necessary scienter was missing.

The majority held that its highly subjective scienter test saved the two partial-birth abortion statutes from unconstitutional vagueness. Physicians performing procedures that may literally seem to meet the statutory criteria (e.g., in Illinois, the person performing the abortion "partially vaginally delivers a living human fetus or infant before killing the fetus or infant and completing the delivery," 720 ILCS sec. 513/5, or in Wisconsin, it is an abortion "in which a person partially vaginally delivers a living child, causes the death of the partially delivered child with the intent to kill the child, and then completes the delivery of the child," Wis. Stat. sec. 940.16(1)(b)), cannot violate the law unless they plan on doing so--that is, unless they set out intending to perform a D&X procedure.

This is precisely the standard that the physicians in Karlin argued was necessary to give them fair warning of what is prohibited and to forestall arbitrary enforcement decisions that would chill their patients' exercise of

constitutionally protected rights. In the face of the vague language of AB 441's emergency exception, the panel here holds that it is not enough for the physician to believe that the woman faces either death or serious and irreversible impairment of a major bodily function. The highest degree of good faith in the world will not save the Karlin physician, if after-the-fact a committee of doctors, a judge, or a jury decides that the woman had not "really" been facing such a crisis. Emergencies like those contemplated in AB 441 are stressful times for everyone, and the objective standard the majority has adopted gives physicians inadequate notice of what is permissible, and will deter them from performing necessary abortions even if that is what they believe the patient needs.

The Hope Clinic majority rejected exactly the kind of objective standard that the Karlin panel has adopted, because it recognized that doctors could not be forced to perform the late-term abortion procedure first and only learn later whether some outsider thought it fit the statutory definition. Indeed, the strongest evidence that the court today is making a mistake by refusing to rehear Karlin comes from the Hope Clinic majority opinion itself, where the court is explaining why it rejected the need for a health exception to the partial-birth abortion laws:

Can plaintiffs, who object to the vagueness of the states' laws, really welcome a ruling under which every abortion creates the possibility of a prosecution in which the state invites the jury to disagree with the physician's assessment of the procedure's safety? A health exception, where jurors rather than physicians assessed health, would be an order of magnitude worse than the ambiguity plaintiffs perceive in the partial-birth abortion laws.

1999 WL 974098 at *16. Exactly so. After-the-fact assessments of the physician's personal judgment would be an intolerable burden indeed, but that is what the Hope Clinic majority rejected on behalf of the en banc court, and it is what the Karlin majority has permitted.

The only remaining question is whether the Hope Clinic opinion has, in effect, endorsed the Karlin outcome, either specifically or generally. Aside from one minor point, the answer is no. There is an incidental paragraph in Hope Clinic that mentions the Karlin opinion, but it does not focus even indirectly on the different paths the two opinions have taken on the question whether an objective standard can save a statute from unconstitutional vagueness. Instead, the Hope

Clinic majority cites Karlin for the commonplace point that a statute may be sustained against a charge of vagueness if, as construed, it gives reasonable notice of the forbidden conduct, even if some people do not pay attention to the notice. Id. at *7. In so doing, the Hope Clinic majority expresses disapproval of the Sixth Circuit's opinion in Women's Medical Professional Corp. v. Voinovich, 130 F.3d 187 (6th Cir. 1997). If the Sixth Circuit really meant to say that a statute never gives fair warning, even if the person to whom it is addressed is, figuratively speaking, wearing earplugs and playing loud music, then I agree it went too far. That is because the question whether a statute gives fair warning is a legal one, which is answered when the court interprets the statute. In Hope Clinic, of course, the majority went much further to avoid the vagueness challenge, when it found that the doctor who blocked out whatever notice the Wisconsin and Illinois statutes gave and inadvertently performed a D&X not intending to violate the law is off the hook. But even putting that point to one side, the fact remains that the brief mention of Karlin in the Hope Clinic opinion does not reconcile the scienter standards the two cases have adopted. The next abortion case that reaches this court--not to mention the next vagueness challenge in any other area--will find little guidance in either Hope Clinic or the present case, which this equally divided court is allowing to stand. With the ink hardly dry on Hope Clinic, I believe we have an institutional responsibility to provide better guidance to the people who live in the Seventh Circuit, to lawyers, and to the district judges. I therefore respectfully dissent from the decision not to rehear this case en banc.