NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 4 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TANDEM FUND II, L.P., | No. 23-16187 |
| Plaintiff-Appellant, | D.C. No. 3:23-cv-02810-VC |
| v. | MEMORANDUM* |
| SCOTTSDALE INSURANCE COMPANY, | |
| Defendant-Appellee, | |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted October 22, 2024
San Francisco, California

Before: GILMAN,** WARDLAW, and COLLINS, Circuit Judges.
Dissent by Judge COLLINS.

Plaintiff Tandem Fund II, L.P. ("Tandem") appeals the district court's

dismissal of its complaint alleging breach of an insurance contract against

Scottsdale Insurance Company ("Scottsdale"). We have jurisdiction under 28

U.S.C. § 1291, and, reviewing the dismissal de novo, *see Zimmerman v. City of

Oakland*, 255 F.3d 734, 737 (9th Cir. 2001), we affirm.

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Ronald L. Gilman, United States Circuit Judge for the U.S. Court
of Appeals for the Sixth Circuit, sitting by designation.

# I

Tandem, a venture capital firm, provided loans to Cuff, Inc. ("Cuff"), a start-up company that Tandem had helped to set up. Cuff aimed to develop and market jewelry containing location-transmitting software, and Deepa Sood was hired to be the jewelry designer and ultimately serve as Cuff's CEO. Tandem asserted that, at the time it made the loans in the fall of 2015, it relied on Cuff's critical supply contract with Richline Group ("Richline"), a major jewelry wholesaler owned by Berkshire Hathaway. In fact, as an arbitration panel later found, the Richline contract had been terminated in July 2015, but Sood and Cuff never informed Tandem of that. Tandem was never repaid on the loans that it provided to Cuff, which failed as a business. After Tandem assigned the loans to Bijoux Corp. ("Bijoux"), Bijoux instituted an arbitration proceeding against Cuff and Sood. A three-arbitrator panel ruled unanimously in favor of Bijoux on its claims for intentional misrepresentation and fraudulent concealment, and the panel awarded as damages against Cuff and Sood, jointly and severally, (1) the total amount of the loan advances paid by Tandem to Cuff, less a $100,000 credit for value received from Bijoux's purchase of Cuff's remaining assets; (2) certain "Lender's Expenses" incurred as a result of the fraud; (3) prejudgment interest on these sums; and (4) certain arbitration fees. The panel also awarded, against Cuff but not Sood, attorneys' fees and certain litigation expenses. The panel declined to award

punitive damages.

Bijoux thereafter "acquired all of Cuff's rights" under the Business and Management Indemnity Policy (the "Policy") issued by Scottsdale to Cuff (under which Sood was also covered), and Tandem acquired "all of the assets of Bijoux." Tandem filed suit in state court alleging that Scottsdale had breached the Policy by failing to pay the arbitral award, and Scottsdale removed the case to federal court based on diversity. The district court dismissed the complaint, holding that the restitutionary award made by the arbitrators was not insurable under California law. Tandem has timely appealed.

## II

In the relevant coverage section, the Policy generally states that Scottsdale "shall pay the Loss" for which the "Company" or its "Directors and Officers" "become legally obligated to pay by reason of a Claim" made against them, including in an arbitration, "for any Wrongful Act taking place" during the coverage period (*i.e.*, from April 1, 2015 to April 1, 2016). The Policy generally defines "Loss" as "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court," as well as legal costs and fees, but excluding, *inter alia*, "matters uninsurable" under California law. The district court held that the arbitrators' award here involves a claim for an uninsurable matter and that there was therefore no coverage. In reaching this conclusion, the

3

district court relied on the "well established" principle "that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired." *Bank of the West v. Superior Ct.*, 833 P.2d 545, 553 (Cal. 1992); *see also Unified Western Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1115 (9th Cir. 2006) ("California case law precludes indemnification and reimbursement of claims that seek the restitution of an ill-gotten gain."). We agree.

The California Supreme Court explained the public-policy rationale for this uninsurability rule as follows:

> When the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrongdoer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law. Otherwise, the wrongdoer would retain the proceeds of his illegal acts, merely shifting his loss to an insurer.

*Bank of the West*, 833 P.2d at 555. "This public policy exclusion for restitutionary relief" bars coverage only in "situations in which the defendant is required to restore to the plaintiff that which was wrongfully acquired." *Unified Western Grocers*, 457 F.3d at 1115 (quoting *Bank of the West*, 833 P.2d at 554). "The label of 'restitution' or 'damages' does not dictate whether a loss is insurable." *Id.* In other words, "[h]ow the claim or judgment order or settlement is worded is irrelevant." *Id.* (citation omitted).

Here, the arbitrators held Cuff and Sood liable for the amount Tandem

4

advanced in loans, minus a credit for the value received from Tandem's acquisition of Cuff's assets. The arbitration panel made clear that it was awarding, and that Tandem was suing to recover, "the loans [Tandem] advanced." Cuff and Sood were thus being "asked to return something [Cuff] wrongfully received," and that remedy "is more properly characterized as restitutionary rather than compensatory in nature." *See Jaffe v. Cranford Ins. Co.*, 214 Cal. Rptr. 567, 570 (Ct. App. 1985). Accordingly, it falls within *Bank of the West*'s rule.

Tandem argues that the arbitrators' award did not expressly order a "return" of Tandem's loan advances and that the award, by its terms, was instead based on the "damages" that Tandem suffered, which merely *equaled* the amount of the loan advances. But labels such as "damages," and the absence of labels such as "return," are not controlling. *See Bank of the West*, 833 P.2d at 555. The arbitrators clearly stated that Tandem was suing to recover the loan funds that it advanced, and that Cuff and Sood were liable for the amount of those loaned funds because Tandem relied on the "false overall picture of Cuff's financial prospects" in advancing those loans to Cuff. In substance, the panel held that Cuff and Sood were "required to restore to the plaintiff that which was wrongfully acquired." *See Bank of the West*, 833 P.2d at 554 (quoting *Jaffe*, 214 Cal. Rptr. at 571).

Tandem also points out that, although the arbitration panel held that Cuff and Sood were jointly liable for the loan proceeds, only Cuff was the recipient of

5

the loan—not Sood.  According to Tandem, the arbitrators' award therefore could not have been restitution against Sood because Sood never obtained the loan proceeds for herself and could not "return" those proceeds in the sense that *Bank of the West* requires.  Tandem thus argues that, at the very least, Scottsdale must provide coverage for Sood because she was not liable for uninsurable restitution.  Tandem's argument, however, would create an obvious end run around *Bank of the West*'s uninsurability rule, and Tandem cites no authority that has recognized it.  If Sood's joint liability with Cuff for actions she took on Cuff's behalf were sufficient to trigger coverage under Cuff's policy, that joint liability with Cuff would then be satisfied by insurance proceeds from Scottsdale.  That would create the very scenario that the *Bank of the West* rule seeks to avoid, namely, that Cuff "would retain the proceeds of [its] illegal acts, merely shifting [its] loss to an insurer."  *Bank of the West*, 833 P.2d at 555.  The *Bank of the West* rule is instead preserved by holding that the loss is uninsurable under Cuff's policy as to both Cuff and Sood, leaving Sood to try to seek indemnity or contribution from Cuff (to the extent practically available) for any amounts she ultimately pays.

Tandem also argues that, because all of the funds paid by Tandem were received by Cuff, and because Cuff's funds have been completely dissipated, the arbitral award cannot be said to "restore" any funds to Tandem.  The award, according to Tandem, is therefore not restitutionary in the sense that *Bank of the*

6

*West* requires. But allowing Cuff and Sood to obtain insurance for ill-gotten gains so long as they manage to fully squander those funds is directly contrary to the reasoning of *Bank of the West*, because such an outcome "would eliminate the incentive for obeying the law" and effectively allow Cuff and Sood to "transfer the cost of disgorgement to an insurer." *Bank of the West*, 833 P.2d at 555. Nothing in the California decisions states that, in order for *Bank of the West*'s rule to apply, the insured must be *capable* of restoring the funds to the plaintiff; rather, all that is required is that the insured has been *ordered* to restore them to the plaintiff. *See id*. at 556 (noting that insurance coverage is barred only in "situations in which the defendant is *required to restore* to the plaintiff that which was wrongfully acquired." (emphasis altered) (simplified)). Here, Cuff and Sood were required to restore to Tandem that which was wrongfully acquired: the loans that Tandem advanced. Thus, the district court correctly held that "Tandem offers no support for the extraordinary proposition that an award of restitution is only appropriate or tenable when the wrongdoer is still sitting on the ill-gotten gains."

Because the arbitrators' award of the loaned funds was for uninsurable restitution, that award involved a matter for which there was no coverage. The district court properly granted Scottsdale's motion to dismiss on that basis.[1]

---

[1] Tandem also argues that, in any event, the arbitrators' additional award of fees and expenses cannot be deemed to be restitutionary so as to fall within *Bank of the West*'s rule. But as the district court noted, Tandem's opposition to Scottsdale's

7

**AFFIRMED.**

---

motion to dismiss did not raise any argument that these fees and expenses required a different analysis, and so we deem any such argument to have been forfeited. *See Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir. 1985).

*Tandem Fund II L.P. v Scottsdale Ins. Co.*, No. 23-16187

COLLINS, Circuit Judge, dissenting:

In my view, the district court erred in holding that the arbitral award here involves "matters uninsurable" under California law. I would therefore reverse the district court's dismissal of the complaint of Plaintiff Tandem Fund II, L.P. ("Tandem") alleging that Defendant Scottsdale Insurance Company ("Scottsdale") breached its insurance contract. Because the majority concludes otherwise, I respectfully dissent.

## I

Scottsdale argues, as it did in the district court, that the award is uninsurable under the principle "that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired." *Bank of the West v. Superior Ct.*, 833 P.2d 545, 553 (Cal. 1992). The district court agreed with Scottsdale on this point and did not reach any other ground asserted by Scottsdale.

The principle invoked by Scottsdale was first explicitly recognized by the California Supreme Court in *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253 (Cal. 1990). There, the court addressed whether an insured's obligation to reimburse a government agency for environmental response costs was uninsurable under California caselaw holding "that, as a matter of public policy, an insured's payment of certain types of restitution cannot be covered by insurance." *Id*. at

1274.  In particular, the court noted that *Jaffe v. Cranford Ins. Co.*, 214 Cal. Rptr. 567 (Ct. App. 1985), had held that an "insurer has no duty to defend [an] insured against criminal prosecution for Medicaid fraud, despite [the] fact that [the] state could have sought civil reimbursement of fraudulently procured funds instead of prosecuting," because "such reimbursement would be 'restitution,' not 'damages.'" *AIU Ins.*, 799 P.2d at 1274–75.

As relevant here, the California Supreme Court in *AIU* held that *Jaffe* was "inapposite," because "[r]eimbursement of response costs . . . is not *restitutive* in the narrow sense identified by *Jaffe* as inappropriate for insurance coverage."  799 P.2d at 1275 (emphasis added).  As the court explained, *Jaffe* had expressly limited its holding to "situations in which the defendant is required to restore to the plaintiff that which was wrongfully acquired."  *Id*. (quoting *Jaffe*, 214 Cal. Rptr. at 571); *see also Jaffe*, 214 Cal. Rptr. at 570 (noting that the civil relief posited in *Jaffe* would involve the return of "funds overpa[i]d" by Medi-Cal).  The relief at issue in *AIU*, the court stated, was not "of the narrow type identified by [*Jaffe*] as not a proper subject of coverage by insurance."  *AIU*, 799 P.2d at 1275.  That was true because "reimbursement of response costs is restitutive" only in the sense "that it attempts to restore to the governments the value of a benefit constructively conferred on [the insured]"; it therefore did not involve an order "to restore to the plaintiff that which was wrongfully acquired."  *Id*. at 1274–75; *see also id*. at 1274

2

(noting the distinction between damages that "*substitute* for a suffered loss" and an order for "specific" relief providing "for the recovery of specific property or monies" (simplified)).

The California Supreme Court again addressed the scope of this uninsurability principle in *Bank of the West*. There, the court addressed whether coverage was available for monetary relief under California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq*. *See Bank of the West*, 833 P.2d at 547, 557.[1] The court noted that "[t]he only nonpunitive monetary relief available under the [UCL] is the disgorgement of money that has been wrongfully obtained or, in the language of the statute, an order 'restor[ing] . . . money . . . which may have been acquired by means of . . . unfair competition.'" *Id*. at 552–53 (quoting CAL. BUS. & PROF. CODE § 17203). Given this limited scope of monetary relief, the court held that "insurable damages do not include the costs of disgorgement under [the UCL]." *Id*. at 553. The court noted that this conclusion followed from the principle recognized in *Jaffe*, which the court explained as follows:

> When the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrongdoer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law. Otherwise,

[1] Although the court in *Bank of the West* referred to the statute as the "Unfair Business Practices Act," the court later settled on calling it "the UCL." *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 942 n.3 (Cal. 2003).

the wrongdoer would retain the proceeds of his illegal acts, merely shifting his loss to an insurer.

*Id.* at 555. The court rejected the insureds' argument that *Jaffe* had been overruled by *AIU*, concluding that *AIU* had merely recognized *Jaffe*'s limits. As the court explained, "*Jaffe* bars coverage only in 'situations in which *the defendant is required to restore to the plaintiff that which was wrongfully acquired*.'" *Id.* at 556 (quoting *AIU*, 799 P.2d at 1275 (emphasis added by *Bank of the West*)).

Consequently, what matters is not the "label" that a party attaches to a claim, but only whether the claim seeks the *return* of "money or property that the insured wrongfully acquired." *Unified Western Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1115 (9th Cir. 2006); *see also Pan Pac. Retail Props., Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 966–67 (9th Cir. 2006) (stating that, in applying this California-law principle, "we must look beyond the labels of the asserted claims or remedies" and determine whether, in substance, the claim "seek[s] the *return* of something wrongfully received" or instead "seek[s] compensation for injury suffered as a result of the insured's conduct" (emphasis added)).

The district court concluded that the damages awarded by the arbitral panel fell within this uninsurability rule because the sums awarded equaled the amount of the loaned funds that Cuff (and Sood, acting as an officer of Cuff) had received from Tandem through fraud. But in reaching this conclusion, the district court ignored an important limitation on that rule. As noted, the rule's rationale is that,

4

given the unfairness of allowing a wrongdoer to "retain the proceeds of his illegal acts," an order that merely requires him to "*restore* to the plaintiff that which was wrongfully acquired" is "more properly characterized as restitutionary rather than compensatory in nature" and therefore involves a payment obligation that is uninsurable. *Bank of the West*, 833 P.2d at 554–55 (emphasis added). But here, there is a critical feature that renders the arbitrators' award fundamentally "compensatory in nature," rather than "restitutionary," and therefore outside the scope of this rule. *Id*. at 555.

As the arbitral panel noted, Cuff had no assets left at the time of the arbitral award, given that Cuff had failed as a business and its remaining assets had been acquired by Tandem itself (through Bijoux). There is thus no sense in which it could be said that Cuff still "retain[ed] the proceeds of [its] illegal acts" and could be ordered to "*return* money or property that has been wrongfully acquired." *Bank of the West*, 833 P.2d at 553, 555 (emphasis added). Moreover, there is no suggestion in the arbitral award that Sood siphoned off, for her own benefit, any of the loan funds that Cuff received. On the contrary, the arbitrators found that Sood plowed $205,000 of her own money into Cuff, "hoping some way would be found to save the company." Because all of the funds paid by Tandem were received by Cuff, and Cuff's funds have been completely "dissipated," the arbitral award does not seek to "restore" any funds to Tandem; rather, it seeks to *compensate* Tandem

5

by providing a *substitutive* remedy of "imposing a merely personal liability upon the defendant to pay a sum of money." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (citation omitted); *see also AIU*, 799 P.2d at 1274 (noting that restitutionary awards "attempt to give the plaintiff the very thing to which he was entitled" rather than a "*substitute* for a suffered loss" (citation omitted)).

Accordingly, I would hold that the arbitral award in this case does not fall within the "narrow type" of cases in which the claims are, by virtue of their restitutionary character, "not a proper subject of coverage by insurance." *AIU*, 799 P.2d at 1275.

## II

Scottsdale alternatively argues that the judgment should be affirmed on the ground that coverage was barred by California Insurance Code § 533 as a matter of law. Because the majority sustains the judgment based on Scottsdale's first point, it has no occasion to reach this alternative argument. But given my disagreement with the majority, I must address it. I would reject this contention as well.

Section 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured." CAL. INS. CODE § 533. "Section 533 is 'an implied exclusionary clause which by statute is to be read into all insurance policies.'" *J.C. Penney Cas. Ins. Co. v. M.K.*, 804 P.2d 689, 694 (Cal. 1991) (citation omitted).

6

"The purpose of such a prohibition is obviously to discourage wilful torts." *Downey Venture v. LMI Ins. Co.*, 78 Cal. Rptr. 2d 142, 154 (Ct. App. 1998). However, § 533 "does not preclude coverage for acts that are negligent or reckless." *J.C. Penney*, 804 P.2d at 695; *see also Downey Venture*, 78 Cal. Rptr. 2d at 155 (noting that "gross negligence or recklessness are not wilful acts within the meaning of section 533" and that § 533 also requires "more than the *intentional* doing of an act constituting ordinary negligence or the violation of a statute"). A willful act for purposes of § 533 includes "either (1) an act done with intent to injure, *i.e.*, an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damages were highly probable or substantially certain to result, or (2) an act inherently harmful, *i.e.*, an intentional wrongful act in which the harm is inherent in the act itself." *Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 46 Cal. Rptr. 3d 517, 532–33 (Ct. App. 2006); *see also J. C. Penney*, 804 P.2d at 698 (noting that subjective intent is irrelevant in the latter scenario).

Here, it cannot be said that, as a matter of law, Cuff's and Sood's liability arose from "an act done with intent to injure." *See Ortega Rock Quarry*, 46 Cal. Rptr. 3d at 532. Neither the allegations of the complaint nor the findings of the arbitration award suffice to establish that Sood deliberately made her knowingly false representations "for the express purpose of causing damage" to Tandem. *Id.*

Indeed, the arbitrators' findings instead suggest that Sood acted in the (perhaps reckless) hope that, with additional funds, Cuff would succeed and that neither she nor Tandem would be harmed. Nor can it be said, as a matter of law, that Sood made her misrepresentations "with knowledge that damages were highly probable or substantially certain to result." *See id.* at 532–33. Although the misrepresentations induced Tandem to provide the loaned funds, it cannot be said, at the pleading stage, that Sood *knew* it was "substantially certain" that the loan would never be repaid. *See Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 15 Cal. Rptr. 2d 815, 836 (Ct. App. 1993) (holding that what matters is whether the insured "actually knew or believed" that harm was highly probable or substantially certain and not what the insured "reasonably should have known"); *cf. J.C. Penney*, 804 P.2d at 695 (citing authority "noting that even conduct in conscious disregard of the safety of others, *e.g.*, drunk driving, is not willful under section 533" (citation omitted)). In fact, the arbitrators noted that, around the same time that Cuff received funds from Tandem, Sood provided $205,000 of her own funds—which she also has never recovered—and that "she did so hoping some way would be found to save the company."

It also cannot be said, at the pleading stage, that Cuff and Sood committed an "inherently harmful" act—*i.e.*, one that, like child molestation, "is *always* harmful." *J.C. Penney*, 804 P.2d at 698. Assuming *arguendo* that some fraudulent

8

schemes might be deemed so inherently harmful as to fall within § 533, there is no basis for concluding, as a matter of law, that Sood's actions on behalf of Cuff present such a circumstance. As I have noted, the arbitrators found that Sood acted in the hope that Cuff could be saved, and nothing in the arbitrators' decision or the complaint precludes the possibility that, at the time the loans were made, Cuff might have been salvaged.

Accordingly, I would hold that the judgment in Scottsdale's favor cannot be affirmed on the alternative ground that, as a matter of law, § 533 bars coverage.[2]

### III

Because, in my view, both of the arguments that Scottsdale raised in its motion to dismiss fail, the district court erred in granting that motion.[3] I would therefore reverse the district court's judgment and remand for further proceedings. Because the majority instead affirms the judgment, I respectfully dissent.

---

[2] The district court also held that the arbitrators' award of "associated lender expenses, interest, and fees" was uninsurable because "they are not tethered to any insurable loss." Because the district court's analysis on this score thus rested solely on its predicate holding that the award of the amount of the loaned funds was uninsurable, that analysis, in my view, is likewise vitiated.

[3] Scottsdale also argues that, because Cuff had a contractual obligation to Tandem to repay the loaned funds that the arbitrators awarded, that award reflects Cuff's "refusal to make payment under a contract" and therefore "does not give rise to a loss caused by a wrongful act." *August Ent. v. Philadelphia Indem. Ins. Co.*, 52 Cal. Rptr. 3d 908, 917 (Ct. App. 2007). Because Scottsdale did not raise this argument below and has not endeavored to explain how this argument would apply to the award against Sood, I would decline to address it.

9