Filed 3/13/24  P. v. Munoz-Garcia CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN ALBERTO MUNOZ-GARCIA,<br><br>    Defendant and Appellant. | A165868<br><br>(Contra Costa County<br> Super. Ct. No. 04-200408-3) |

Defendant Juan Alberto Munoz-Garcia appeals from noneconomic restitution orders imposed after he pleaded guilty to sexual offenses involving his niece (Jane Doe 1) and his stepdaughter (Jane Doe 2).  Munoz-Garcia contends that the trial court erred in awarding noneconomic damages of $100,000 to each victim without a jury trial.  He also argues that the noneconomic restitution award with respect to Jane Doe 2 must be stricken because there was insufficient evidence that she suffered psychological harm.  Finally, he maintains that the trial court should not have imposed a $1,000 restitution fine without determining his ability to pay.  We reverse the noneconomic damages award with respect to Jane Doe 2, but otherwise affirm.

## I.  BACKGROUND

On June 28, 2021, the Contra Costa County District Attorney filed the operative information in this case charging Munoz-Garcia, as relevant here,

with six felony counts of child sexual abuse. With respect to Jane Doe 1, the information alleged that Munoz-Garcia committed sexual intercourse or sodomy with a child 10 years of age or younger (Pen. Code,[1] § 288.7, subd. (a); count 1); lewd and lascivious acts on a child under 14 (§ 288, subd. (a); count 2); and forcible lewd and lascivious acts on a child under 14 (§ 288, subd. (b)(1); count 3). With respect to Jane Doe 2, the information alleged that Munoz-Garcia committed lewd and lascivious acts on a child under 14 (§ 288, subd. (a); count 4) and two counts of oral copulation or sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b); counts 5 and 6).

## A.    *Underlying Facts*

The following facts were presented at the preliminary hearing in this matter:

### 1.    Allegations Involving Jane Doe 1

In 2015, when Jane Doe 1 was 11 years old, she disclosed that Munoz-Garcia, her uncle, had sexually assaulted her when she was nine or 10 years old. The incident occurred when Jane Doe 1 was spending the night at her aunt's house after attending a family barbecue. She awoke in the middle of the night to find Munoz-Garcia putting her on the floor and pulling down her pants. She tried to pull them back up, but he prevented her. Munoz-Garcia then inserted his penis into her anus, pushing back and forth for about two minutes. He continued even after Jane Doe 1 told him to stop. She indicated "it hurt." He finally stopped after she told him she needed to use the bathroom. On other occasions, when she was 10, Munoz-Garcia would grab Jane Doe 1 by the wrist when she was trying to leave the room and place her hand on his private area.

---

[1] All undesignated statutory references are to the Penal Code.

### 2. Allegations Involving Jane Doe 2

Jane Doe 2, Munoz-Garcia's stepdaughter, reported being assaulted by Munoz-Garcia on August 30, 2020. She was asleep in her bedroom when she woke up to find Munoz-Garcia touching her pants. She then felt him reach inside her pants and touch her private parts, which she used for peeing and called her " 'puka.' " She reported being scared and nervous and that it hurt. Munoz-Garcia then rolled her over and began touching inside her butt. He then spread her buttocks open and licked inside of her butt. He continued to touch her until he eventually left. At that point, Jane Doe 2 got up and reported the assault to her mother. When confronted, Munoz-Garcia initially denied the abuse but later stated he was still drunk, apologized, and said it would never happen again.

### B. *Plea and Sentencing*

On April 4, 2022, after advisement of his rights, Munoz-Garcia pleaded guilty to counts 3 and 4. In exchange for the guilty plea, the parties agreed to a 16-year prison term and dismissal of the remaining counts. The trial court then proceeded immediately to sentencing and heard a victim impact statement from Jane Doe 1. She stated that, although significant time had passed since Munoz-Garcia sexually assaulted her, she was still psychologically scarred by it. She blamed herself and still "remember[ed] everything" about the assault, despite trying to forget. She recalled that Munoz-Garcia had turned her family against her and that she had lost hope anyone would ever believe her. She cried for years "on the bedroom floor trying not to kill [herself]." Pursuant to the plea agreement, the court sentenced Munoz-Garcia—who was in his mid-30's at the time—to 16 years in prison and imposed various fines and fees, including a $1,000 restitution fine.

On July 28, 2022, the court held a hearing under section 1202.4, subdivision (f)(3)(F) regarding victim restitution for noneconomic losses. The prosecution requested noneconomic restitution of $100,000 for each victim. Defense counsel objected to the requested noneconomic damages for Jane Doe 2, arguing that there was no factual basis. In rejecting this argument and awarding the requested noneconomic restitution to both victims, the court reasoned: "Anyone who has any kind of life experience, especially judges who have seen the results of these things following years afterwards, knows that kind of assault causes damage. It causes physical damage. It causes emotional damage. And it causes rippling, reverberating problems throughout life." It further concluded that it could "use the record that was established as to Jane Doe 1 in supporting an order for Jane [Doe] 2 because they were victimized in very similar ways." Munoz-Garcia timely appealed from the order for noneconomic restitution.

## II. DISCUSSION

### A. *Noneconomic Restitution*

Munoz-Garcia argues that the noneconomic damages awarded in this case must be stricken as unauthorized. First, he asserts that he was entitled under the state and federal Constitutions to a jury trial on the amount of any such damage award. Second, he maintains that the award of noneconomic damages to Jane Doe 2 must be stricken due to insufficient evidence that she suffered psychological harm. We address each contention in turn.

### 1. Statutory Framework and Standard of Review

"Pursuant to the California Constitution, victims of crime have a right to restitution from criminal defendants: 'Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss.' (Cal. Const.,

4

art. I, § 28, subd. (b)(13)(B).)  To [satisfy] this constitutional requirement, the Legislature enacted section 1202.4, which requires the trial court to order a defendant to pay victim restitution 'in an amount established by court order, based on the amount of loss claimed by the victim . . . or any other showing to the court.' (§ 1202.4, subd. (f).)"  (*People v. Lehman* (2016) 247 Cal.App.4th 795, 800 (*Lehman*).)

"With one exception, restitution orders are limited to the victim's economic damages."  (*People v. Smith* (2011) 198 Cal.App.4th 415, 431 (*Smith*).)  The exception provides that restitution may be ordered for "[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288, 288.5, or 288.7."  (§ 1202.4, subd. (f)(3)(F).) "Noneconomic damages are 'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.' (Civ. Code, § 1431.2, subd. (b)(2).)"  (*Smith*, at p. 431.)

In *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  (*Id.* at p. 490.)  "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  (*Blakely v. Washington* (2004) 542 U.S. 296, 303 (*Blakely*), italics omitted.)  The principle of *Apprendi* applies to criminal fines.  (*Southern Union Co. v. United States* (2012) 567 U.S. 343, 346 [fines for violating federal environmental statutes].)

In the context of economic restitution awarded pursuant to section 1202.4, numerous appellate courts have concluded that there is no Sixth Amendment right to a jury trial under *Apprendi* and its progeny because direct victim restitution is not a criminal penalty. (*People v. Pangan* (2013) 213 Cal.App.4th 574, 585 (*Pangan*), citing *U.S. v. Behrman* (7th Cir. 2000) 235 F.3d 1049, 1054 ["direct victim restitution is a substitute for a civil remedy so that victims of crime do not need to file separate civil suits. It is not increased 'punishment' "]; *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1183–1184 (*Chappelone*) [rejecting argument that victim restitution under § 1202.4 is increased punishment for a crime; instead, " ' "the primary purpose of victim restitution is to provide monetary compensation to an individual injured by crime" ' "]; accord, *People v. Millard* (2009) 175 Cal.App.4th 7, 35–36 (*Millard*); see also § 1202.4, subd. (a)(3)(B) [a victim restitution award "shall be enforceable as if the order were a civil judgment"].)

In *Smith*, *supra*, 198 Cal.App.4th 415, the Third Appellate District concluded by analogy that there is no constitutional right to a jury trial with respect to a restitution order for *noneconomic* damages awarded pursuant to section 1202.4. (*Smith*, at p. 433.) Specifically, *Smith* reasoned: "[T]here is no basis for distinguishing jury trial rights, or lack thereof, for restitution orders for economic damages and restitution orders for noneconomic damages. In both cases, the trial court is performing a task that, in a civil case, a jury would perform." (*Ibid.*)

" ' "A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious. [Citation.] No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." ' [Citation.] 'The court "must demonstrate a

6

rational basis for its award, and ensure that the record is sufficient to permit meaningful review.  The burden is on the party seeking restitution to provide an adequate factual basis for the claim.” ’ ”  (*People v. Gomez* (2023) 97 Cal.App.5th 111, 116 (*Gomez*); accord, *People v. Giordano* (2007) 42 Cal.4th 644, 655.)  “However, a restitution order ‘resting upon a “ ‘demonstrable error of law’ ” constitutes an abuse of the court’s discretion.’ ”  (*Millard*, *supra*, 175 Cal.App.4th at p. 26.)

## 2.    No Right to a Jury Trial on Noneconomic Restitution

As mentioned above, the trial court here awarded noneconomic restitution of $100,000 to each victim.  (See § 1202.4, subd. (f)(3)(F).)  Munoz-Garcia contends these awards were improper because he was entitled to a jury trial to determine the amount of these noneconomic losses based on proof beyond a reasonable doubt.[2]  Acknowledging the case law to the contrary set forth above, Munoz-Garcia maintains that *Smith* was wrongly decided.  And he attempts to distinguish the other cases by arguing they involved economic rather than noneconomic restitution.  Munoz-Garcia then asserts a string of reasons why noneconomic restitution should be treated differently than economic restitution with respect to jury trial rights, none of which we find persuasive.

To begin with, we disagree with Munoz-Garcia’s general premise—that noneconomic restitution constitutes increased punishment, while economic restitution does not.  Both are forms of direct victim restitution under section 1202.4, the primary purpose of which “ ‘ “is to provide monetary compensation to an individual injured by crime” ’ ”  (*Chappelone*, *supra*,

_____

[2] The Attorney General argues in passing that Munoz-Garcia has forfeited this claim by failing to request a jury trial with respect to restitution in the trial court.  Because we conclude that no such right exists, we do not reach the issue.

7

183 Cal.App.4th at p. 1184; see *Pangan, supra,* 213 Cal.App.4th at p. 585 ["direct victim restitution is a substitute for a civil remedy so that victims of crime do not need to file separate civil suits"].) Moreover, "[t]o the extent a victim restitution order has the secondary purposes of rehabilitation of a defendant and/or deterrence of the defendant and others from committing future crimes, those purposes do not constitute increased punishment of the defendant." (*Millard, supra,* 175 Cal.App.4th at pp. 35–36.)

Munoz-Garcia nevertheless argues that noneconomic restitution must be viewed as primarily punitive because subdivision (f)(3)(F) of section 1202.4—the provision authorizing noneconomic restitution—applies only to defendants convicted of certain sexual offenses against children, singling them out for disparate treatment. To the contrary, the legislative history underlying the adoption of this provision reflects an entirely nonpunitive purpose. In 1991, the Supreme Court held that insurers under general liability policies "are not required to indemnify their insureds for damages caused by an insured's sexual molestation of a child." (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1014 (*J.C. Penney*).) The case dealt specifically with a felony conviction under section 288 and "foreclosed the use of liability insurance proceeds as compensation" for victims of such abuse. (*People v. Montiel* (2019) 35 Cal.App.5th 312, 333 (dis. opn. of Banke, J.).) The Legislature responded by adopting legislation focused "on providing the minor child victims of molesters with additional sources of compensation. The Senate Committee on Judiciary report explained: 'In lieu of making insurance benefits available to victims of an insured's criminal conduct, proponents instead propose several other ideas to compensate the victim for the injuries.' [Citation.] These were: (1) '[i]nvading the homestead exemption of the defendant'; (2) '[i]ncreasing

State assistance to child victims of sexual abuse'; and (3) '[i]ncreasing restitution payments to the child molestation victim to also cover psychological damages and noneconomic losses.' " (*Id.* at pp. 333–334, italics omitted.) The Legislature's aim, in other words, was not to punish child sex offenders, but to create a substitute for a civil remedy so that these particular victims of crime need not file separate civil suits.

Munoz-Garcia additionally contends that noneconomic restitution is punitive because the amount of restitution "necessarily" turns on factors such as the duration or severity of the crime. Munoz-Garcia provides no authority for the proposition that a restitution award based on such factors is necessarily punitive. To the contrary, to the extent the duration and severity of the crime corroborate a victim's claim of psychological harm, their consideration fully comports with the compensatory nature of the award.

Munoz-Garcia also complains there is "literally no limit" to the amount of noneconomic restitution a trial court may impose. We acknowledge that the task of translating nonpecuniary injuries into dollars and cents is "difficult" and " 'not a process of measurement.' " (*Beagle v. Vasold* (1966) 65 Cal.2d 166, 172.) But the subjective nature of this determination does not change the compensatory nature of noneconomic restitution. (See *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1332 [noneconomic damages "compensate" injured plaintiff for nonpecuniary injuries such as pain and suffering].) Nor does it mean that noneconomic restitution does not compensate a victim for his or her actual loss. And it is simply incorrect to say there is no limiting principle to awards of noneconomic restitution. As stated above, case law cautions that a court must have a rational and factual basis for the noneconomic restitution ordered and it may not be arbitrary or capricious. (*Gomez*, *supra*, 97 Cal.App.5th at p. 116.)

Finally, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Munoz-Garcia contends that the noneconomic restitution award is punitive because he does not have the ability to pay it. However, *Dueñas* is of no assistance to Munoz-Garcia. There, the court held that an indigent defendant has a due process right to a determination of ability to pay before the imposition of court operations assessments (§ 1465.8) and court facilities assessments (Gov. Code, § 70373) and the execution of restitution fines (§ 1202.4, subd. (b)). (*Dueñas*, at pp. 1164, 1169.) *Dueñas* expressly did not address direct victim restitution (*id*. at pp. 1169–1170), and several courts have since held that the *Dueñas* rule does not apply to victim restitution (see, e.g., *People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 860; *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338; *People v. Evans* (2019) 39 Cal.App.5th 771, 776–777). Thus, *Dueñas* does not suggest that noneconomic victim restitution constitutes increased punishment for purposes of *Apprendi* simply because a defendant does not have the ability to pay it.

### 3. Insufficient Evidence Supporting Restitution Award for Jane Doe 2

Munoz-Garcia next challenges the award of noneconomic restitution to Jane Doe 2 as not supported by the record because no evidence was presented that she suffered psychological harm. The Attorney General disagrees, contending that the $100,000 award was supported by the parties' stipulation that Jane Doe 2 was particularly vulnerable, caselaw describing the psychological harm generally suffered by victims of child abuse, Jane Doe 2's statement when initially interviewed that Munoz-Garcia "hurt" her and she was "scared and nervous" during the abuse, and the court's conclusion that because both victims suffered similar "horrific and violent" assaults, similar

10

restitution awards were appropriate. We conclude Munoz-Garcia has the better argument.[3]

Section 1202.4 requires the trial court to order a defendant to pay victim restitution "in an amount established by court order, based on the amount of loss claimed by the victim . . . or *any other showing to the court*." (§ 1202.4, subd. (f), italics added.) Thus, we agree with the Attorney General that the statute "does not require any particular kind of proof to establish a victim's losses." (*Lehman*, *supra*, 247 Cal.App.4th at p. 803.) For instance, a court may consider the trial testimony of the victims, statements made at the sentencing hearing, and the contents of the probation report. (*Id.* at pp. 801, 803.) But while there is no specific *type* of proof required, *some showing* of noneconomic loss related to the actual victim must still be made to the court to justify the damages award.

It is no doubt true that the nature of the sexual crimes committed by Munoz-Garcia renders it *very likely* that Jane Doe 2 was psychologically harmed. (See *J.C. Penney*, *supra*, 52 Cal.3d at p. 1026 ["Some acts are so inherently harmful that the intent to commit the act and the intent to harm

---

[3] *Smith* and *Lehman* applied the standard of review from the civil damages context in reviewing the *amount* of a restitution award for noneconomic damages under section 1202.4, holding: " 'An appellate court can interfere on the ground that the judgment is excessive only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury.' " (*Smith*, *supra*, 198 Cal.App.4th at p. 436; accord, *Lehman*, *supra*, 247 Cal.App.4th at p. 801.) However, because Munoz-Garcia's challenge is not that the award is excessive, but rather that it lacks an adequate factual basis, the shocks-the-conscience standard is inapplicable here. (See *Gomez*, *supra*, 97 Cal.App.5th at p. 116, fn. 4.) We will thus apply the traditional abuse of discretion standard.

are one and the same. The act is the harm. Child molestation is not the kind of act that results in emotional and psychological harm only occasionally." ].) However, as our colleagues in Division Five of this District recently explained: " '[A] crime victim may recover only for losses *personally incurred by that victim*.' (*People v. Runyan* (2012) 54 Cal.4th 849, 859; see also Cal. Const., art. I, § 28, subd. (b)(13)(A) ['all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing *the losses they suffer*' (italics added)].) In other words, it is insufficient that the *average victim* would suffer injury from a particular type of crime, or that *generally* victims of such crimes suffer injury." (*Gomez, supra*, 97 Cal.App.5th at p. 118; see also *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1182–1184 [noneconomic restitution awards reversed where no facts or reliable evidence supported them], superseded by statute on other grounds as stated in *People v. Brooks* (2018) 23 Cal.App.5th 932, 946 & fn. 17.)

In this case, Jane Doe 2 did not testify at the preliminary hearing or sentencing hearing, and no statement was provided by any knowledgeable party regarding the impact of Munoz-Garcia's crimes on her. Rather, the only evidence even arguably relevant to the claim that Jane Doe 2 suffered psychological damage or other noneconomic losses as the result of the abuse was a statement from her forensic interview that she felt "scared and nervous" at the time of the molestation when Munoz-Garcia "hurt" her, and a stipulation by the parties (in order to allow imposition of an aggravated term) that Jane Doe 2 was a "particularly vulnerable" victim.

We agree with the *Gomez* court that the "evidentiary bar is a low one" in this context. (*Gomez, supra*, 97 Cal.App.5th at p. 119.) We also acknowledge the difficulty in this case in providing such evidence because the

victim is a minor and her mother was not cooperative and did not want to pursue a restitution request. However, the prosecution could have attempted to obtain statements or testimony from others with personal knowledge of the impact on the victim, such as her biological father or a treating physician or therapist. Instead, there is *no* evidence of the impact of Munoz-Garcia's crimes on Jane Doe 2, and the trial court relied exclusively on its experience and common sense regarding similar incidents in awarding restitution. Under such circumstances, the trial court's restitution award to Jane Doe 2 was an abuse of discretion.[4] We will therefore reverse the award and issue a limited remand. On remand, the prosecution may again, if desired, seek noneconomic restitution for Jane Doe 2 based on more robust evidence.

## B.  *Restitution Fine*

As part of his plea agreement, Munoz-Garcia acknowledged in writing that he would be required to pay a restitution fine of not less than $200 or more than $10,000 and gave up his right to appeal his sentence in exchange for the negotiated disposition. At sentencing on April 4, 2022, defense counsel asked to address fines and fees under *Dueñas*, *supra*, 30 Cal.App.5th 1157. After the trial court allowed him to do so, counsel argued that Munoz-Garcia did not have the ability to pay the fines and fees because he was embarking on a lengthy prison sentence, had no assets, and would not be employed in prison. The court questioned how defense counsel knew that Munoz-Garcia would not be employed in prison. Counsel then changed tactics, asserting that any "meager income" he would receive in prison would likely go to direct victim restitution. The prosecutor argued that Munoz-

---

[4] Because Munoz-Garcia does not contest the factual basis for the noneconomic restitution award to Jane Doe 1 and we reverse the award to Jane Doe 2, we need not determine the adequacy of any waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 made in this case.

Garcia had the ability to pay the restitution fine given his long prison sentence. Determining it could not find an inability to pay on the record before it, the court imposed the $1,000 restitution fine but agreed to suspend the court operations and criminal conviction assessments.

Citing *Dueñas* and its progeny, Munoz-Garcia finally argues on appeal that imposing the restitution fine without a hearing on his ability to pay violated his state and federal constitutional rights to due process, equal protection, and protection from excessive fines. It appears that the court conducted a hearing and simply found insufficient evidence to stay the fine. However, we do not reach this issue on its merits because we have no jurisdiction to do so. " 'In a criminal case, judgment is rendered when the trial court orally pronounces sentence.' " (*People v. Montes* (2021) 70 Cal.App.5th 35, 47, quoting *People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) Here, judgment was rendered on April 4, 2022, and Munoz-Garcia did not timely appeal. (Cal. Rules of Court, rule 8.308(a) [notice of appeal must be filed within 60 days after the rendition of the judgment].) Rather, his notice of appeal in this case was from the July 28, 2022 victim restitution order and was filed that same day.

" 'A timely notice of appeal, as a general matter, is "essential to appellate jurisdiction." ' [Citation.] 'An untimely notice of appeal is "wholly ineffectual: The delay cannot be waived, it cannot be cured by nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion." [Citation.] The purpose of the requirement of a timely notice of appeal is, self-evidently, to further the finality of judgments by causing the [party] to take an appeal expeditiously or not at all.' [Citation.] As a consequence, ' " 'an unappealed [judgment] is final and binding and may not be attacked on an appeal from a later

14

appealable order.' " ' " (*In re G.C.* (2020) 8 Cal.5th 1119, 1127.)  Because Munoz-Garcia's notice of appeal cannot be deemed timely with respect to the imposition of the restitution fine, we cannot consider its propriety.

### III.  DISPOSITION

The $100,000 award of noneconomic restitution to Jane Doe 2 is reversed and the matter is remanded for further proceedings regarding whether Munoz-Garcia owes noneconomic restitution to Jane Doe 2.  The judgment is otherwise affirmed.

CASTRO, J.*

WE CONCUR:

BANKE, ACTING P. J.

LANGHORNE WILSON, J.

A165868
*People v. Munoz-Garcia*

---

\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16